PAUL HASTINGS LLP
Thomas A. Counts (SB# 148051)
Grant N. Margeson (SB# 299308)
tomcounts@paulhastings.com
grantmargeson@paulhastings.com
101 California Street, 48th Floor
San Francisco, CA 94111
Telephone: (415) 856-7000
Facsimile: (415) 856-7100

Steven A. Marenberg (SB# 101033)
James M. Pearl (SB# 198481)
stevenmarenberg@paulhastings.com
jamespearl@paulhastings.com
1999 Avenue of the Stars, 27th Floor
Los Angeles, CA, 90067
Telephone: (310) 620-5700
Facsimile: (310) 620-5899

Noah Pinegar (*pro hac vice*)
noahpinegar@paulhastings.com
2050 M Street, NW
Washington, DC, 20036
Telephone: (202) 551-1700
Facsimile: (202) 551-0460

Attorneys for Defendant
ALIGN TECHNOLOGY, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| SIMON AND SIMON, PC d/b/a CITY SMILES and VIP DENTAL SPAS, individually and on behalf of all others similarly situated,<br><br>            Plaintiffs,<br><br>   v.<br><br>ALIGN TECHNOLOGY, INC.,<br><br>            Defendant. | CASE NO. 3:20-CV-03754-VC<br><br>**DEFENDANT ALIGN TECHNOLOGY, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Date:  November 5, 2020<br>Time:  10:00 a.m.<br>Place:  Courtroom 4, 17th Floor<br>Judge:  The Hon. Vince Chhabria |

**Table of Contents**

**Page**

I.   INTRODUCTION AND SUMMARY OF ARGUMENT .................................................1

II.  STATEMENT OF FACTS ................................................................................................2

III. LEGAL STANDARD.......................................................................................................5

IV.  ARGUMENT ....................................................................................................................5

    A.   Plaintiffs Fail to Allege Antitrust Injury ...................................................................6

        1.   One Plaintiff Bought a Scanner Before the Alleged "Scheme"
            Occurred and the Other Never Bought One at All....................................6

        2.   Plaintiffs Fail to Allege the Timing of Their Invisalign Purchases. ...........7

    B.   Plaintiffs Fail to Allege Exclusionary Conduct ........................................................8

        1.   Plaintiffs Fail to Allege Exclusivity and Substantial Foreclosure,
            Required to Allege Actionable Exclusive Dealing. ....................................8

        2.   Plaintiffs Fail To Allege Below-Cost Pricing, Required For An
            Illegal Bundled Discounting Claim. .........................................................10

        3.   Plaintiffs Fail To Allege An Illegal Unilateral Refusal To Deal. .............12

        4.   Viewed In Total, The Allegations Do Not Amount To
            Exclusionary Conduct. .............................................................................14

V.   CONCLUSION................................................................................................................15

ALIGN'S MOTION TO DISMISS

**Table of Authorities**

**Page(s)**

**Cases**

*3Shape TRIOS A/S v. Align Tech., Inc.*,
   C.A. No. 18-1332-LPS (D. Del. filed Aug. 28, 2018) ..............................................................4

*Aerotec Int'l. v. Honeywell Int'l*,
   836 F.3d 1171 (9th Cir. 2016) ..........................................................................................9, 11, 12

*Align Tech., Inc. v. 3Shape A/S*,
   C.A. No. 17-1646-LPS (D. Del. filed Nov. 14, 2017) .........................................................4

*Align Tech., Inc. v. 3Shape A/S*,
   C.A. No. 17-1647-LPS (D. Del. filed Nov. 14, 2017) .........................................................4

*Align Tech., Inc. v. 3Shape A/S*,
   C.A. No. 17-1648-LPS (D. Del. filed Nov. 14, 2017) .........................................................4

*Align Tech., Inc. v. 3Shape A/S*,
   C.A. No. 17-1649-LPS (D. Del. filed Nov. 14, 2017) .........................................................4

*Align Tech., Inc. v. 3Shape A/S*,
   C.A. No. 18-1949-LPS (D. Del. filed Dec. 11, 2018) .........................................................4

*Align Tech., Inc. v. 3Shape A/S*,
   C.A. No. 18-1950-LPS (D. Del. filed Dec. 11, 2018) .........................................................4

*Am. Nat'l Mfg. v. Select Comfort Corp.*,
   2016 U.S. Dist. LEXIS 193268 (C.D. Cal. Sep. 28, 2016)...................................................14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).........................................................................................................5, 10

*Aspen Skiing v. Aspen Highlands Skiing*,
   472 U.S. 585 (1985)...............................................................................................................12

*Bay Area Surg. Mgmt. v. Aetna Life Ins. Co.*,
   No. 15-CV-01416, 2016 WL 3880989 (N.D. Cal. July 18, 2016)........................................14

*Bell Atl. v. Twombly*,
   550 U.S. 544 (2007).......................................................................................................1, 2, 5

*Brantley v. NBC Universal, Inc.*,
   675 F.3d 1192 (9th Cir. 2012) ...............................................................................................6

*Cal. Comput. Prods., Inc. v. Int'l Bus. Machs. Corp.*,
   613 F.2d 727 (9th Cir. 1979) ............................................................................................5, 6

    ALIGN'S MOTION TO DISMISS

*Cascade Health Sols. v. PeaceHealth*,
   515 F.3d 883 (9th Cir. 2008) ...................................................................................10, 11

*In the Matter of Certain Dental and Orthodontic Scanners and Software*,
   Inv. No. 337-TA-1144 (Dec. 10, 2018) ...............................................................................4

*In the Matter of Certain Intraoral Scanners and Related Hardware and Software*,
   Inv. No. 337-TA-1090 (Nov. 14, 2017)................................................................................4

*In the Matter of Certain Intraoral Scanners and Related Hardware and Software*,
   Inv. No. 337-TA-1091 (Nov. 14, 2017)................................................................................4

*City of Anaheim v. So. Cal. Edison*,
   955 F.2d 1373 (9th Cir. 1973) ...........................................................................................15

*Coto Settlement v. Eisenberg*,
   593 F.3d 1031 (9th Cir. 2010) .............................................................................................3

*Datagate, Inc. v. Hewlett-Packard Co.*,
   941 F.2d 864 (9th Cir. 1991) ...............................................................................................6

*Deadco Petroleum, FKA v. Trafigura AG*,
   617 F. App'x 636 (9th Cir. 2015) ......................................................................................15

*Dreamstime.com, LLC v. Google, LLC*,
   2019 U.S. Dist. LEXIS 13408 (N.D. Cal. Jan. 28, 2019) ..................................................14

*Eastman v. Quest Diagnostics Inc.*,
   2016 U.S. Dist. LEXIS 56266 (N.D. Cal. Apr. 26, 2016) ..................................................14

*Fed. Trade Comm'n v. Qualcomm Inc.*,
   -- F.3d --, 2020 WL 4591476 (9th Cir. Aug. 11, 2020)..................................................10, 12

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) ...........................................................................................13

*Glen Holly Entm't, Inc. v. Tektronix Inc.*,
   352 F.3d 367 (9th Cir. 2003) ...............................................................................................6

*Image Tech. Servs. v. Eastman Kodak Co.*,
   125 F.3d 1195 (9th Cir. 1997) ...........................................................................................12

*In Pro Search Plus, LLC v. VFM Leonardo, Inc.*,
   No. SACV 12-2102-JST ANX, 2013 WL 3936394 (C.D. Cal. July 30, 2013).........................9

*Jefferson Par. Hosp. Dist. No. 2 v. Hyde*,
   466 U.S. 2 (1984) (O'Connor, J., concurring) ......................................................................8

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ........................................................................3

*LiveUniverse, Inc. v. MySpace, Inc.*,
    304 F. App'x 554 (9th Cir. 2008) .................................................................13

*MedioStream, Inc. v. Microsoft*,
    869 F. Supp. 2d 1095 (N.D. Cal. 2012) .......................................................11

*MetroNet Servs. v. Qwest*,
    383 F.3d 1124 (9th Cir. 2004) .................................................................11, 12

*Omega Envtl. v. Gilbarco*,
    127 F.3d 1157 (9th Cir. 1997) ..............................................................8, 9, 10

*Pac. Bell Tel. Co. v. linkLine Communs., Inc.*,
    555 U.S. 438 (2009)......................................................................................15

*Rheumatology Diagnostics Lab., Inc. v. Aetna, Inc.*,
    No. 12-CV-05847-WHO, 2013 WL 5694452 (N.D. Cal. Oct. 18, 2013).......8, 9, 10

*Ricketts v. CBS Corp.*,
    No. 19-cv-3895-DSF, 2020 U.S. Dist. LEXIS 124441
    (C.D. Cal. June 18, 2020) ................................................................................7

*Simon & Simon PC d/b/a City Smiles v. Align Tech., Inc.*,
    C.A. No. 19-506-LPS, 2019 WL 5191068 (D. Del. Oct. 15, 2019) .........................4

*Simon & Simon PC d/b/a City Smiles v. Align Tech., Inc.*,
    C.A. No. 19-506-LPS, 2020 WL 1975139 (D. Del. Apr. 24, 2020).........................4

*Simon & Simon PC d/b/a City Smiles v. Align Tech., Inc.*,
    C.A. No. 19-506-LPS, ECF No. 31 (D. Del. filed May. 14, 2020) .........................5

*Somers v. Apple*,
    729 F.3d 953 (9th Cir. 2013) ....................................................................7, 8

*Unigestion Holdings, S.A. v. UPM Tech., Inc.*,
    412 F. Supp. 3d 1273 (D. Or. 2019) ..............................................................11

*Vinci v. Waste Mgmt., Inc.*,
    80 F.3d 1372 (9th Cir. 1996) ..........................................................................7

*Western Parcel v. UPS*,
    190 F.3d 974 (9th Cir. 1999) ..........................................................................9

## Other Authorities

Fed. R. Civ. P. 12(b)(6)...............................................................................1, 5

**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FAC**

TO PLAINTIFF SIMON AND SIMON, PC D/B/A CITY SMILES AND ITS COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on November 5, 2020, at 10:00 a.m., or as soon thereafter as this matter may be heard in the courtroom of the Honorable Vince Chhabria at the United States District Court for the Northern District of California, San Francisco Courthouse, Courtroom 4 – 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Align Technology, Inc. ("Align") shall and hereby does move the Court to dismiss the First Amended Complaint ("FAC") filed by Plaintiffs Simon and Simon, PC d/b/a City Smiles ("Simon & Simon") and VIP Dental Spas (together, "Plaintiffs") for failure to state a claim on which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). The FAC fails to allege causal injury to support either of its two counts. The FAC also fails to satisfy the Ninth Circuit tests for exclusionary conduct, an element without which the claims must fail.

This motion is based on this notice of motion and supporting memorandum of points and authorities, the supporting declarations of Thomas A. Counts and Kent Alleyne Henry, and accompanying exhibits, the previously filed Request for Judicial Notice, reply briefing in further support of this motion and supporting declarations and accompanying exhibits, any additional written or oral argument presented to the Court, as well as other matters that may properly come before the Court.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION AND SUMMARY OF ARGUMENT**

Due to "the costs of modern federal antitrust litigation," the Supreme Court has mandated scrutiny of antitrust complaints at the pleadings stage to ensure they allege sufficient facts to conclude that a plausible claim has been pled. *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007). The Amended Complaint (the "First Amended Complaint" or "FAC"), which alleges that Align has monopolized both a market for clear, removable dental aligners (the "Aligner market") (Count 1), and a separate market for digital intraoral scanners used to measure teeth to order aligners (the "Scanner market") (Count 2), fails this test and should be dismissed under Rule 12(b)(6).

The FAC is fundamentally inadequate.  Sherman Act, Section 2 monopolization claims require, among other things, sufficiently detailed, non-conclusory allegations of antitrust injury and exclusionary conduct.  In this case, the FAC satisfactorily alleges neither.

*Antitrust Injury:* Neither named plaintiff alleges cognizable antitrust injury.  Align's clear aligner product, "Invisalign," was a breakthrough, patent-protected innovation and a revolutionary technique for straightening teeth.  Plaintiffs' theory of the case is that facing the *expiration* of certain Invisalign patents in 2017, Align engaged in a series of exclusionary acts to maintain its purported dominance.  Plaintiffs concede that prior to their expiration in 2017, however, any alleged Align dominance lawfully resulted from these patents.  Simon & Simon purchased a purportedly overpriced scanner in 2016 *prior to the expiration of the aforementioned patents.*  Its purchase, the basis for its claim, occurred *while* both the scanner and Invisalign were lawfully protected by patents and *before* the anticompetitive conduct alleged began.  VIP Dental Spas, meanwhile, has *never* purchased a scanner or Invisalign from Align.  The FAC therefore fails to plausibly allege causal antitrust injury, without which there can be no claim.

- 1 -

*Exclusionary Conduct*: Plaintiffs' allegations of exclusionary conduct—conduct that harmed competition—fail the *Twombly* test. In what Plaintiffs hyperbolically term "the Scheme," they allege that Align: (1) after suing scanner rival 3Shape Trios A/S ("3Shape") for patent infringement, Align terminated a fifteen-month agreement that made 3Shape's scanner interoperable with Align's Invisalign System; (2) introduced a "bundled discount" program that, notably, is not alleged to be priced below-cost; (3) made changes to a non-exclusive volume discount program; and (4) entered into agreements Plaintiffs characterize as de facto exclusive with two dental service organizations ("DSOs"). These allegations, even accepted as true, fail to constitute unlawful exclusionary conduct. Instead, they amount to ordinary, lawful competition on the merits under the controlling precedents in this Circuit. Thus, the FAC fails to allege actionable exclusionary conduct and should be dismissed.

## II.    STATEMENT OF FACTS[1]

Over twenty years ago, Align introduced a new way for people to improve their smile: a product called Invisalign. Invisalign is a set of removable, clear plastic dental aligners prescribed by a dentist or orthodontist and configured to correct a patient's particular tooth misalignment. FAC ¶¶ 1, 22. Align's patent-protected innovation disrupted an industry that dates back to Roman times—teeth straightening. The industry's still-dominant technology, braces, dates back to at least the early 20th century. After introducing Invisalign, Align continued to innovate, developing technology, again patented, to make it easier to make the models used to create Invisalign. As a result of Align's sustained investment and innovation over two decades, U.S. consumers have more choices than ever for improving their smiles.

---

[1] Align recognizes that, for the purposes of this motion, the Court will assume the truth of the allegations in the FAC.

Align markets Invisalign to the general public, who visit authorized dental professionals who can prescribe Invisalign. FAC ¶ 22. The dental professional takes an impression of the patient's dentition, either with an intraoral scanner or traditional silicone molds, and aligners are customized based on a treatment plan developed from the impression. FAC ¶¶ 22, 32, 48. Align also markets Invisalign to dentists, who are trained before prescribing Invisalign. FAC ¶ 19. Align secured patents to protect its Invisalign technology. FAC ¶ 9.

In March 2015, Align introduced a hand-held digital intraoral scanner, the iTero Element ("iTero"), FAC ¶ 21, which obviates the need for physical impressions of patients' teeth. Instead, the iTero can be used to send digital scans to Align for preparing a digital treatment plan. FAC ¶¶ 5-8, 31. Dentists can use the iTero to send scans to other aligner manufacturers. *Cf.* FAC ¶ 32. Align secured patents to protect its scanning technology.

Beginning in October 2016, Align accepted 3Shape "Trios" scans for Invisalign. FAC ¶ 45. The Trios can also send scans to other aligner manufacturers. FAC ¶¶ 7, 26, 40. Align has had interoperability with two other intraoral scanners, the Midmark True Definition scanner and Dentsply Sirona CEREC Omnicam scanner, allowing those scanners to generate digital impressions for Invisalign. FAC ¶ 33, 105-07.

In *December 2016*, Simon & Simon purchased an iTero scanner from Align at a negotiated price. FAC ¶ 18; Henry Decl., Ex. 1.[2] Months later, in *October 2017*, some of Align's Invisalign patents began to expire. FAC ¶¶ 28-30. Since then, there has been "competition in the Aligner market from large companies with substantial experience," such as Straumann, Henry Schein, and

---

[2] Since Plaintiffs allege they purchased iTero scanners, but do not specify when, *see* FAC ¶ 18, the Court may rely on the purchase agreements incorporated by reference because Plaintiffs' claims depend on purchase of the iTero and neither has disputed their authenticity. *See Knievel v. ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005); *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).

3M, FAC ¶ 72, and others.  FAC ¶ 30.  VIP Dental Spas, which is merely a fictitious business name, has never purchased an iTero or the Invisalign System from Align.  Henry Decl., ¶ 8.

Notably, the FAC does *not* allege any patent misuse by Align, such as fraud committed to obtain patents or enforcing patents through objectively baseless ("sham") litigation.  The "Scheme" allegedly began after certain Invisalign patents expired in 2017.  FAC ¶ 30.

In November 2017, having discovered that 3Shape unlawfully uses Align's patented technology, Align brought actions against 3Shape for patent infringement before the International Trade Commission ("ITC") and in the District of Delaware.[3]  After filing the actions, Align terminated interoperability with 3Shape, effective January 31, 2018.  *See* FAC ¶¶ 43-44.

In response, 3Shape sued Align in Delaware, alleging monopolization of clear aligners and attempted monopolization of scanners.  *See* Compl., *3Shape TRIOS A/S v. Align Tech., Inc.*, C.A. No. 18-1332-LPS (D. Del. filed Aug. 28, 2018).  Align won dismissal of 3Shape's Complaint and Align's motion to dismiss 3Shape's First Amended Complaint is pending.  *See 3Shape TRIOS A/S v. Align Tech., Inc.*, C.A. No. 18-1332-LPS (D. Del.).

In March 2019, Simon & Simon filed a follow-on complaint in Delaware.  *See Simon & Simon PC d/b/a City Smiles v. Align Tech., Inc.*, C.A. No. 19-506-LPS, 2020 WL 1975139, at *1 (D. Del. Apr. 24, 2020).  Align moved, *inter alia*, to dismiss that case and the Delaware Magistrate Judge recommended dismissal for failure to allege acts constituting anticompetitive conduct

---

[3] *See Align Tech., Inc. v. 3Shape A/S*, C.A. No. 17-1646-LPS (D. Del. filed Nov. 14, 2017); C.A. No. 17-1647-LPS (D. Del. filed Nov. 14, 2017); C.A. No. 17-1648-LPS (D. Del. filed Nov. 14, 2017); C.A. No. 17-1649-LPS (D. Del. filed Nov. 14, 2017); *In the Matter of Certain Intraoral Scanners and Related Hardware and Software*, Inv. No. 337-TA-1090 (Nov. 14, 2017); Inv. No. 337-TA-1091 (Nov. 14, 2017).  Align subsequently filed additional actions.  *See Align Tech., Inc. v. 3Shape A/S*, C.A. No. 18-1949-LPS (D. Del. filed Dec. 11, 2018); C.A. No. 18-1950-LPS (D. Del. filed Dec. 11, 2018); *In the Matter of Certain Dental and Orthodontic Scanners and Software*, Inv. No. 337-TA-1144 (Dec. 10, 2018).

without reaching the forum issue. *See id.*[4] Simon & Simon thereafter voluntarily dismissed the case. *See* Notice of Dismissal, *Simon & Simon PC d/b/a City Smiles v. Align Tech., Inc.*, C.A. No. 19-506-LPS, ECF No. 31 (D. Del. filed May. 14, 2020). Simon & Simon filed its original complaint in this Court on June 5, 2020, apparently seeking a more sympathetic forum. Dkt. No. 1. After Align moved, on July 28, 2020, to dismiss the original complaint on grounds including Simon & Simon's lack of standing, Dkt. No. 24, Plaintiffs filed the FAC on August 14, 2020, adding "VIP Dental Spas" as another named Plaintiff. *See* Dkt. No. 29.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) requires that a complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). To meet this, there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* This is especially true in an antitrust case such as this, considering the "costs of modern federal antitrust litigation and the increasing caseload of the federal courts counsel against sending the parties into discovery when there is no reasonable likelihood that the plaintiffs can construct a claim from the events related in the complaint." *Twombly*, 550 U.S. at 558 (quotation omitted).

## IV. ARGUMENT

To state a claim for monopolization, a complaint must plausibly allege: (a) monopoly power in a relevant market; (b) the willful acquisition or maintenance of that power; and (c) causal antitrust injury. *Cal. Comput. Prods., Inc. v. Int'l Bus. Machs. Corp.*, 613 F.2d 727, 735 (9th Cir. 1979). Monopoly power is "the power to control prices or exclude competition." *Id.* (citation omitted). Willful acquisition or maintenance of monopoly power distinguishes lawful monopoly

---

[4] *See also Simon & Simon PC d/b/a City Smiles v. Align Tech., Inc.*, C.A. No. 19-506-LPS, 2019 WL 5191068 at *9 n.6 (D. Del. Oct. 15, 2019).

ALIGN'S MOTION TO DISMISS

power, earned by skill or acumen, from unlawful monopoly power resulting from "unlawful and exclusionary practices." *Id.* (citation omitted). Causal antitrust injury requires "not only injury causally linked to the asserted violation, but also that the injury is of the type the antitrust laws were intended to prevent." *Id.* at 732 (citation omitted). The FAC fails to plead two elements: causal antitrust injury and exclusionary conduct, and should be dismissed.

### A.   Plaintiffs Fail to Allege Antitrust Injury

Plaintiffs fail to allege antitrust injury. Antitrust injury has four elements: "(1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent." *Glen Holly Entm't, Inc. v. Tektronix Inc.*, 352 F.3d 367, 372 (9th Cir. 2003) (citation omitted).

At this stage, "plaintiffs must allege both that defendant's behavior is anticompetitive and that plaintiff has been injured by an anti-competitive aspect of the practice under scrutiny." *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1200 (9th Cir. 2012) (citation omitted). The injury alleged must be linked to a specific violation of antitrust laws. *See Datagate, Inc. v. Hewlett-Packard Co.*, 941 F.2d 864, 869 (9th Cir. 1991) ("[F]ailure to show injury from a specific violation of the antitrust laws thus precludes . . . recovery."). Plaintiffs fail to allege causal injury.

### 1.   One Plaintiff Bought a Scanner Before the Alleged "Scheme" Occurred and the Other Never Bought One at All.

Plaintiffs allege that the Scheme began after Align's patent-derived exclusivity expired. FAC ¶ 30. Align disputes that the Scheme constitutes actionable exclusionary conduct, *see infra*, but even if it does, it occurred after Simon & Simon had already bought its iTero scanner.

Simon & Simon purchased an iTero scanner from Align pursuant to an agreement signed in *December 2016*. *See* Henry Decl., Ex. 1. The FAC alleges that Align launched the Fusion program in *late 2017*, FAC ¶ 56, terminated interoperability on *January 31, 2018*, FAC ¶ 44, and

"changed the [Advantage] program" *in 2018*, FAC ¶ 62.  The two DSO agreements referenced in the FAC, with Heartland Dental and Aspen Dental, were both announced on *July 25, 2018*.  FAC ¶¶ 52-53.  Although Plaintiffs allege a scanner purchase at "a price that was artificially inflated as result of [Align]'s anticompetitive scheme," FAC ¶ 18, they allege no anticompetitive conduct prior to that purchase.[5]  Plaintiffs recognize that Align had the benefit of lawful patent exclusivity prior to that time.  *See* FAC ¶ 29.  Since the Scheme alleged had not yet begun, Simon & Simon cannot have suffered causal injury with respect to its iTero purchase.  *See Somers v. Apple*, 729 F.3d 953, 963-66 (9th Cir. 2013).  Simon & Simon's scanner purchase cannot support Count 2 of the FAC.

The other named Plaintiff, VIP Dental Spas, has *never* purchased a scanner or Invisalign from Align.  Henry Decl., ¶ 8.  Public records show that VIP Dental Spas is merely a fictitious business name used by Sherwin Matian DMD, A Dental Corporation.  Counts Decl., Ex. A.  It is not a legal entity and thus not a proper plaintiff.  *See Ricketts v. CBS Corp.*, No. 19-cv-3895-DSF, 2020 U.S. Dist. LEXIS 124441 (C.D. Cal. June 18, 2020).  Moreover, neither VIP Dental Spas nor the Dental Corporation is an Align customer, Henry Decl., ¶ 8, as Dr. Matian instead purchased an iTero scanner *as an individual* in June 2018.  Henry Decl., Exs. 2-3.  Because VIP Dental Spas did not purchase a scanner from Align, it fails to allege antitrust injury.  *See Vinci v. Waste Mgmt., Inc.*, 80 F.3d 1372, 1375 (9th Cir. 1996) ("[A] plaintiff who is 'neither a competitor nor a consumer' in the relevant market does not suffer 'antitrust injury.'").  VIP Dental Spas also cannot support Count 2 of the FAC, which then must be dismissed.

### 2.    Plaintiffs Fail to Allege the Timing of Their Invisalign Purchases.

As with the iTero purchases, failure to allege Invisalign purchases after the alleged

---

[5] Plaintiffs' proposed class period, beginning on March 15, 2015, FAC ¶ 86, is unsupported for the same reason.

anticompetitive conduct began is fatal to Plaintiffs' claim. *See generally* FAC. Absent details about the timing of their purchases, the FAC fails to allege that Plaintiffs plausibly suffered injury from the alleged Scheme as it relates to alleged monopolization of clear aligners. The absence of even the most basic details needed to state a claim requires dismissal of Count 1 relating to aligners. *See Somers*, 729 F.3d at 963-66.

### B.    Plaintiffs Fail to Allege Exclusionary Conduct

In addition to failing to allege antitrust injury, the FAC also fails to allege any actionable exclusionary conduct—an additional, independent ground that warrants dismissal. Each of the alleged exclusionary acts in the FAC is examined below.

### 1.    Plaintiffs Fail to Allege Exclusivity and Substantial Foreclosure, Required to Allege Actionable Exclusive Dealing.

The FAC alleges that two agreements to deploy Align iTero scanners—with DSOs Heartland Dental and Aspen Dental—somehow harm competition in two separate product markets. *See* FAC ¶¶ 52-53. But Plaintiffs fail to allege any facts to show how that could be. Exclusive contracts have "well-recognized economic benefits . . . including the enhancement of interbrand competition." *Omega Envtl. v. Gilbarco*, 127 F.3d 1157, 1162 (9th Cir. 1997).

Exclusive dealing arrangements are only actionable under Section 2 when the effect of the agreement is to "'foreclose competition in a substantial share of the line of commerce affected.'" *Id.* at 1162 (citation omitted). Courts consider market-specific facts, including "the number of sellers and buyers in the market, the volume of their business, and the ease with which buyers and sellers can redirect their purchases or sales to others." *Jefferson Par. Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 45 (1984) (O'Connor, J., concurring). Exclusive dealing is unreasonable "only when a significant fraction of buyers or sellers are frozen out of a market by the exclusive deal." *Id.*

"[C]ourts typically look (at least initially) to the percentage share of the relevant market foreclosed by the challenged agreement to determine whether the agreement is unreasonable." *Rheumatology Diagnostics Lab., Inc. v. Aetna, Inc.*, No. 12-CV-05847-WHO, 2013 WL 5694452, at *11 (N.D. Cal. Oct. 18, 2013). The Ninth Circuit has been more explicit: "'[t]he foreclosure effect, if any, depends on the market share involved.'" *Omega*, 127 F.3d at 1162 (citation omitted).

Notably, to survive a motion to dismiss, a complaint alleging exclusive dealing must plausibly allege substantial foreclosure. *See Rheumatology Diagnostics*, 2013 WL 5694452, at *11 (citation omitted) ("[P]laintiffs provide no allegations sufficient to show whether the [] agreement 'foreclose[d] competition in a substantial share' of the relevant markets."). Merely alleging a defendant's market share and the existence of exclusive agreements is not enough. *See In Pro Search Plus, LLC v. VFM Leonardo, Inc.*, No. SACV 12-2102-JST ANX, 2013 WL 3936394, at *4 (C.D. Cal. July 30, 2013).

As a threshold matter, Plaintiffs fail even to adequately allege exclusivity. Plaintiffs do not allege that any dentist office is restricted or forbidden in any way from purchasing a different scanner or clear aligner. Instead, in the case of the Heartland DSO, Plaintiffs rely on a volume discount ("Fusion") program offered to "90%" of Heartland's supported offices. *See* FAC ¶ 52.[6] As a threshold matter, the Ninth Circuit has made it clear that "volume discount contracts are legal under antitrust law." *Western Parcel v. UPS*, 190 F.3d 974, 976 (9th Cir. 1999).

Because the volume discount programs in this case admittedly require no exclusivity, Plaintiffs assert that they are *de facto* exclusive because the dentists in the affected DSOs must use Invisalign to reach the volume discount. FAC ¶ 52. However, as the Ninth Circuit has made clear,

---

[6] This program is neither *de facto* nor actually exclusive. *At most*, it is a volume discount program offered to 90% (not 100% and therefore not exclusive) of the dentist offices of one DSO which represents 850 of roughly 200,000 dentists nationwide. *See infra* at n.7.

"in the absence of any exclusive requirements on which the discount is conditioned, the sale remains nonexclusive." *Aerotec Int'l. v. Honeywell Int'l*, 836 F.3d 1171, 1182 (9th Cir. 2016). Plaintiff does not allege the volume discount program has in fact resulted in exclusivity, which is necessary for a *de facto* exclusivity claim that the Ninth Circuit to date has not endorsed. *See id.*

The FAC also omits allegations to plausibly support an allegation of substantial foreclosure. Missing are any allegations indicating the share of the market allegedly foreclosed, how many dentists practice in the United States, whether or how many other DSOs exist, the proportion of dentists in DSOs,[7] the duration of these (or other) contracts, whether other channels of distribution exist,[8] or the terms by which the contracts may be terminated. Thus, merely alleging two agreements with DSOs exist does not remotely support a conclusion that the agreements substantially foreclosed competition quantitatively or qualitatively. *See Rheumatology Diagnostics*, 2013 WL 5694452, at *11 ("It may very well be that [the excluded competitors] constitute a 'substantial share' of the relevant market or markets, but with only what the plaintiffs present, the [c]ourt cannot tell."). Incanting the word "foreclosure" throughout the FAC does not suffice. *See Iqbal*, 556 U.S. at 678. Labels and conclusions do not support substantial foreclosure. *See Fed. Trade Comm'n v. Qualcomm Inc.*, -- F.3d --, 2020 WL 4591476 at *20-21 (9th Cir. Aug. 11, 2020). Thus, the FAC fails to plausibly allege actionable exclusive dealing.

### 2. Plaintiffs Fail To Allege Below-Cost Pricing, Required For An Illegal Bundled Discounting Claim.

Plaintiffs allege that "bundled discounts" are part of Align's "Scheme." *See* FAC ¶¶ 56-60. "Bundling is the practice of offering, for a single price, two or more goods or services that

---

[7] To provide the missing context, Align requests the Court take judicial notice of limited relevant facts, *see* Dkt. No. 25, that demonstrate that these contracts could reflect no more than 1.41% of dentists in the United States and that all DSOs comprise just 8.8% of U.S. dentists.
[8] Substantial foreclosure cannot exist where alternative channels are available for distribution. *See, e.g.*, *Omega*, 127 F.3d at 1163 ("alternatives eliminate substantially any foreclosure effect").

could be sold separately.  A bundled discount occurs when a firm sells a bundle of goods or services for a lower price than the seller charges for the goods or services purchased individually." *Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883, 894 (9th Cir. 2008).  Bundling arrangements are common and "'[t]he great majority of discounting practices are procompetitive' and 'reflect hard bargaining.'"  *See id.* at 895 (citation omitted).  Therefore, it is settled law in this Circuit that courts "should not be too quick to condemn price-reducing bundled discounts as anticompetitive, lest we end up with a rule that discourages legitimate price competition."  *See id.* at 896 (citation omitted).

The Ninth Circuit uses a "discount-attribution standard" – that is, where "the full amount of the discounts given by the defendant on the bundle are allocated to the competitive product or products – to determine when a bundled discount may be actionable.  If the resulting price of the competitive product or products is below the defendant's incremental cost to produce them, the trier of fact may find that the bundled discount is exclusionary for the purpose of [Section 2]."  *Id.* at 906.  Notably, *a plaintiff must allege that the product was priced below the cost to produce it*. *See MedioStream, Inc. v. Microsoft*, 869 F. Supp. 2d 1095, 1108 (N.D. Cal. 2012); *Unigestion Holdings, S.A. v. UPM Tech., Inc.*, 412 F. Supp. 3d 1273, 1288 (D. Or. 2019).

Here, Plaintiffs fail to plausibly allege that Align priced the competing product, its iTero scanner, below cost.  *See* FAC.  In fact, the FAC alleges the opposite; to wit, that "[t]he iTero Scanner is highly profitable, with profit margins above 60 percent."  FAC ¶ 21.[9]  There is no allegation of prices or costs to meet what the Ninth Circuit requires.  The FAC, thus, fails to allege actionable bundled discounting.

---

[9] Plaintiffs allege that Align's pricing is simultaneously too high, FAC ¶ 16, and too low, FAC ¶ 60.

### 3.    Plaintiffs Fail To Allege An Illegal Unilateral Refusal To Deal.

The Sherman Act "as a general matter, 'does not restrict the long recognized right of [a] trader or manufacturer . . . freely to exercise his own independent discretion as to parties with whom he will deal.'" *Aerotec* 836 F.3d at 1183 (citation omitted). "[A]s a general matter 'there is no duty to aid competitors.'" *MetroNet Servs. v. Qwest*, 383 F.3d 1124, 1131 (9th Cir. 2004) (citation omitted).

Only under narrow, fact-intensive circumstances have courts found antitrust liability for a unilateral refusal to deal. *See generally Aspen Skiing v. Aspen Highlands Skiing*, 472 U.S. 585 (1985). The Ninth Circuit requires three elements for a refusal-to-deal claim: (1) "unilateral termination of a voluntary and profitable course of dealing," (2) refusal to sell "even if compensated at retail price," and (3) refusal to provide "products that were already sold in a retail market to other customers." *MetroNet*, 383 F.3d at 1132-33 (internal quotations omitted); *see also Qualcomm*, 2020 WL 4591476 at *11. Termination of a relationship is not actionable unless "the only conceivable rationale or purpose" of it "is to sacrifice short-term benefits in order to obtain higher profits in the long run from the exclusion of competition." *Aerotec*, 836 F.3d at 1184 (citation omitted). Simply put, "[w]hen a legitimate business justification supports a monopolist's exclusionary conduct, that conduct does not violate [Section 2] of the Sherman Act." *Image Tech. Servs. v. Eastman Kodak Co.*, 125 F.3d 1195, 1212 (9th Cir. 1997). Under the Ninth Circuit test, the FAC fails.

Unlike in *Aspen Skiing*, the FAC does not allege that Align refused to sell any product to 3Shape at retail price. [10] It also fails to plausibly allege, nor could it ever with respect to a merchant seeking to sell an alleged infringing product, that the "only conceivable rationale or purpose"

---

[10] Another distinction is that the collaboration in *Aspen Skiing* lasted fifteen years. *See* 472 U.S.at 589, 592. Interoperability between Align and 3Shape lasted fifteen months. FAC ¶ 45.

behind Align's termination of the agreement was "to sacrifice short-term benefits in order to obtain higher profits in the long run from the exclusion of competition." *Aerotec*, 836 F.3d at 1184 (citation omitted). The FAC alleges multiple times that Align's termination of the interoperability agreement was "economically irrational but for" its anticompetitive effects. *See* FAC ¶¶ 11, 45. The Court should disregard this bare conclusion. *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). The FAC itself identifies the procompetitive rationale: the multiple patent enforcement actions Align filed against 3Shape, before terminating interoperability.[11] *See* FAC ¶ 29. Align is not obliged to facilitate infringing sales by continuing a relationship with a firm that infringes its patents.[12] Align ending interoperability was not at all "economically irrational," but legally and rationally justified. The FAC thus fails to allege an actionable unilateral refusal to deal.

The FAC's allegations concerning Align's digital workflow are no more actionable. *See* FAC ¶¶ 31-33. The allegation that Align failed to ensure technological compatibility between the Align treatment system and competitors' scanners and aligners, *see* FAC ¶¶ 31-33, is merely another formulation of a refusal to deal claim dressed in technical trappings. *See LiveUniverse, Inc. v. MySpace, Inc.*, 304 F. App'x 554, 556-57 (9th Cir. 2008) (removal of compatibility between plaintiff's and defendant's web services "is predicated on MySpace's 'refusal to deal' with LiveUniverse"). As in *LiveUniverse*, the FAC does not allege facts to support that Align's workflow design was "contrary to its short-term business interests." *Id.* at 557 (citation omitted). Instead, customers have received Align's product integration favorably, resulting in increased sales. *See* FAC ¶¶ 51-52. Align's digital workflow does not violate antitrust law.

---

[11] *See* cases cited above at n.3
[12] The FAC does not allege Align breached the agreement by ending it.

4.      **Viewed In Total, The Allegations Do Not Amount To Exclusionary Conduct.**

Plaintiffs may argue that the FAC allegations in the aggregate are sufficient to state a claim, even if individual elements of the Scheme are not actionable. Not so. Where, as here, "none of the acts alleged is an antitrust violation," "'there can be no synergistic result'" that creates one. *Dreamstime.com, LLC v. Google, LLC*, 2019 U.S. Dist. LEXIS 13408, at *20 (N.D. Cal. Jan. 28, 2019) (citation omitted). While each instance of "'slight wrongdoing in certain areas need not by itself add up to a violation,'" the FAC "still needs to meet every element of the antitrust claim." *Id.* (citation omitted). Plaintiffs cannot do so when it has not alleged any anticompetitive conduct. *Id.*; *see also Eastman v. Quest Diagnostics Inc.*, 2016 U.S. Dist. LEXIS 56266, at *29-30 (N.D. Cal. Apr. 26, 2016) (dismissing overall scheme theory that consisted of individually nonactionable conduct); *Am. Nat'l Mfg. v. Select Comfort Corp.*, 2016 U.S. Dist. LEXIS 193268, at *23 (C.D. Cal. Sep. 28, 2016) (same).

Plaintiffs have alleged only the following: Align unilaterally terminated a single, voluntary short-term commercial agreement with an infringing competitor to which Align owed no duty to deal, FAC ¶¶ 43-44; Align entered into purportedly exclusive contracts with a mere two groups of dentists, FAC ¶¶ 50-53; Align offered price discounts that were not alleged to be below-cost, FAC ¶¶ 60-61; Align charged a lower fee to send iTero scans to purchase Invisalign aligners than to purchase non-Invisalign aligners, FAC ¶¶ 31, 33; and Align requires dental practitioners who do not own a scanner that Align has certified for Invisalign orders to submit cases for Invisalign using silicone molds, FAC ¶¶ 32, 48.[13] None of these acts are illegal, which strongly cautions against a

---

[13] As the FAC does not allege patent misuse, *see* FAC, obtaining and enforcing patents is properly disregarded from analysis of potential antitrust claims. *See Bay Area Surg. Mgmt. v. Aetna Life Ins. Co.*, No. 15-CV-01416, 2016 WL 3880989, at *9 (N.D. Cal. July 18, 2016) (activity protected by the *Noerr-Pennington* doctrine cannot create antitrust liability).

finding of "overall wrongdoing." *City of Anaheim v. So. Cal. Edison*, 955 F.2d 1373, 1376 (9th Cir. 1973).

Moreover, many of these allegations are instead procompetitive, and demonstrate a well-functioning industry. For example, above-cost discounts are procompetitive; and charging higher prices to use iTero to purchase non-Invisalign aligners encourages entrants into intraoral scanners who want to charge less for orders of non-Invisalign aligners. As Plaintiffs admit, since Align allegedly instituted its "Scheme," competition in aligners and digital dentistry has increased. *See* FAC ¶ 72.

Antitrust liability cannot be based on individually lawful, unilateral conduct such as alleged here—the Supreme Court has precluded creating a new claim out of an "an amalgamation" of multiple "meritless claim[s]" that would require courts "to act as central planners, identifying the proper price, quantity, and other terms of dealing." *Pac. Bell Tel. Co. v. linkLine Communs., Inc.*, 555 U.S. 438, 450, 452 (2009). The allegations here do not meet the elements of an antitrust violation, which does not change when viewing the lawful acts together.

## V.    CONCLUSION

For the foregoing reasons, the FAC should be dismissed. Moreover, dismissal without leave to amend is proper where the amendment would be futile. *Deadco Petroleum, FKA v. Trafigura AG*, 617 F. App'x 636, 639 (9th Cir. 2015). The Scheme alleged (already rejected by the Magistrate Judge in Delaware), no matter how many times reiterated, does not constitute monopolization of any market. Allowing Plaintiffs to shuffle around the same allegations in a further amended pleading would be a waste of the Court's and Align's resources. Align respectfully requests that the Court dismiss the FAC with prejudice.

DATED:  September 9, 2020                    PAUL HASTINGS LLP


                                    By:    */s/ Steven A. Marenberg*
                                           Steven A. Marenberg

                                           Attorneys for Defendant
                                           ALIGN TECHNOLOGY, INC.