**BERGER MONTAGUE PC**
Eric L. Cramer (*pro hac vice*)
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-4604
Fax: (215) 875-4604
Email: ecramer@bm.net

**RADICE LAW FIRM, P.C.**
John Radice (*pro hac vice*)
475 Wall Street
Princeton, NJ 08540
Telephone: (646) 245-8502
Fax: (609) 385-0745
Email: jradice@radicelawfirm.com

**JOSEPH SAVERI LAW FIRM, INC.**
Joseph R. Saveri (SBN. 130064)
Steven N. Williams (SBN. 175489)
601 California Street, Suite 1000
San Francisco, CA 94108
Telephone: (415) 500-6800
Fax: (415-395-9940)
Email: jsaveri@saverilawfirm.com
          swilliams@saverilawfirm.com

*Counsel for Individual and Representative Plaintiffs*

Additional counsel on Signature Page

**PAUL HASTINGS LLP**
Steven A. Marenberg (SBN. 101033)
James Pearl (SBN. 198481)
1999 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067
Telephone: (310) 553-6700
Fax: (310) 620-5899
Email: stevenmarenberg@paulhastings.com
          jamespearl@paulhastings.com

*Attorneys for Defendant Align Technology, Inc.*

Additional counsel on Signature Page

**FILED**

Sep 07 2021

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

SIMON AND SIMON, PC d/b/a CITY SMILES and VIP DENTAL SPAS, individually and on behalf of all others similarly situated,

                              Plaintiffs,

        v.

ALIGN TECHNOLOGY, INC.,

                              Defendant.

Case No.: 3:20-cv-03754-VC

[~~PROPOSED~~] STIPULATED ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION

To facilitate consistency in the format of electronically stored information ("ESI") to be produced by the Parties in this case and to expedite the flow of discovery, Plaintiffs Simon And Simon, PC d/b/a City Smiles and VIP Dental Spas (collectively, "Plaintiffs") and Defendant Align Technology Inc. ("Defendant," collectively with Plaintiffs, the "Parties"), by and through their respective counsel, hereby stipulate and agree to the terms of this Stipulated Order Regarding Protocol for the Production of Documents and Electronically Stored Information (the "ESI Protocol" or "Protocol").

The Parties shall make good-faith efforts to comply with and resolve any differences concerning compliance with this ESI Protocol. Nothing herein is intended to alter the parties' rights and obligations under the Federal Rules of Civil Procedure and applicable law. The Parties specifically reserve all of their rights and objections to any discovery that may be served upon them in this matter.

## 1. PURPOSE

1.1     This Order will govern discovery of ESI in the above-captioned case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

## 2. COOPERATION

2.1     The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

## 3. LIAISON

3.1     The Parties will identify liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI ("e-Discovery Liaisons"). Each e-discovery Liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The Parties will rely on the e-Discovery Liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

### 4.  PRESERVATION

4.1      The Parties have discussed their preservation obligations and needs, and agree that potentially relevant ESI has been preserved, and will continue to be preserved, in a reasonable and proportionate manner. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved during the litigation, the Parties agree that:

4.2      The Parties will meet and confer regarding appropriate custodians and non-custodial data sources to be preserved and searched for responsive documents and the search methodologies to be applied thereto. The Parties will discuss reasonable limits to be placed on custodians, non-custodial data sources, and search terms that are proportional to the needs of the case and take into consideration the asymmetrical burden of discovery.

4.3      The Parties will meet and confer about sources of potentially relevant ESI that are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B). The following sources of data may not be reasonably accessible and do not need to be preserved, searched, reviewed, or produced:

a.   Backup media, backup tapes, or other long-term storage media that were created as a data back-up or disaster recovery medium;

b.   Automatically saved versions of documents and temporary data stored in random access memory (RAM), or other ephemeral data that are difficult to preserve without disabling the operating system;

c.   Data only accessible by advanced forensic analysis, including deleted, slack, or fragmented data;

d.   Temporary Internet files, history, cache, and cookies;

e.   Digital voicemail messages;

f.   Data in metadata fields that are frequently updated automatically, such as last opened dates;

g.   Instant messages that are not ordinarily printed or maintained in a server dedicated to instant messaging;

h.  Electronic mail or pin-to-pin messages sent to or from mobile devices (e.g., iPhone and Blackberry devices), provided that a copy of such mail is routinely saved elsewhere;

i.  Other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere;

j.  Logs of communications made from mobile devices;

k.  Server, system, or network logs;

l.  Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report; and

m.  Data remaining from systems no longer in use that is unintelligible on the systems in use.

Each party reserves the right to identify additional categories of data that are not reasonably accessible as the litigation progresses.

4.4   To help contain costs, the parties shall not be obligated under this ESI Protocol to produce or preserve ESI that was deleted or lost as a result of routine, good-faith operations prior to the date upon which the duty to preserve ESI and documents in connection with this litigation arose. If a Producing Party learns that responsive ESI that existed as of the date upon which the duty to preserve ESI arose (1) was lost, destroyed, or is no longer retrievable, and (2) cannot be restored or replaced through additional discovery, the Producing Party shall promptly advise the Receiving Party. Nothing in this agreement alters the Producing Party's obligations to demonstrate the unavailability of such information pursuant to Federal Rules of Civil Procedure 26(b)(2)(B).

## 5.  PRODUCTION FORMATS

5.1   The Parties agree to produce responsive, non-privileged documents as set forth in Exhibit A. If particular documents require a different format, the parties will meet and confer to arrange for the mutually acceptable production of such documents.

5.2   <u>De-duplication, threading, and de-NISTing</u>.  A producing party shall de-duplicate documents horizontally (globally) across the population of records. In de-duplicating horizontally: (a)

an email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in the BCC or other blind copy field, even if all remaining content in the email is identical; and (b) all Custodians who were in possession of a de-duplicated document, the directory structure where the Custodian stored the de-duplicated document, and all other sources of the document must be identified in the "Custodian – All / All Files Paths" metadata field specified in Exhibit A. The Parties further agree that each Producing Party may reduce duplication of documents through the threading of email strings, which threading operations should not prohibit the production of attachments appearing in any earlier version of an email thread. The parties further agree that they may de-NIST ESI using the current list of system files maintained by the National Software Reference Library. The Parties will maintain all de-duplicated files, de-NISTed ESI, and earlier "threaded" versions of email strings.

      5.3   <u>Redactions</u>. In the event a document is redacted, the full text should be replaced with OCR text that excludes the redacted material. When a TIFF image is redacted, the TIFF image should show the word "redacted" where applicable and a production Load File field should be populated to indicate the document contains a redaction. If a document to be produced in native format requires redaction then it should be produced in redacted native format. The native file should show the word "redacted" where applicable and a production Load File field should be populated to indicate the native file contains a redaction.

      5.4   <u>Structured data</u>. Where a discovery request requires production of structured data (e.g., data from an SAP database), in lieu of producing in accordance with Exhibit A, the producing party may identify such potentially relevant structured data sources within a reasonable period after receiving the discovery request where production in accordance with Exhibit A is not feasible or practicable, and the requesting party and producing party, as appropriate, shall meet and confer on the content and format of data extraction from such structured data source(s).

      5.5   <u>Processing issues</u>. If a member of a document family that has otherwise been determined to be responsive cannot technically be processed (e.g., unsupported file format, file corruption, inaccessible password-protected document), those technical problems shall be identified and disclosed to the Requesting Party by production of a Bates-labeled slipsheet that states "Technical issue—file

cannot be processed." A Requesting Party may thereafter raise with the Producing Party any questions or concerns, and the parties shall meet and confer about the issue and any additional information regarding "Technical issue" documents that the Receiving Party may want. Both Parties will conduct reasonable efforts to resolve any technical issues associated with documents prior to production.

5.6     <u>Attachments</u>: Email attachments and embedded files must be mapped to their parent document by the Bates number by including a "Beg Attach" field designating the beginning of each such attachment and "End Attach" field designating the end of each such attachment. If attachments and embedded files cannot be separated from their parent documents, then "Beg Attach" and "End Attach" fields listing the unique beginning and ending Bates number for each attachment or embedded document must be included. Non-substantive automatically-generated embedded files, such as logos, embedded, non-substantive formatting files such as .ole or .dll formats, or confidentiality legends need not be produced. To the extent they are maintained together, all documents in a document family shall be consecutively Bates number stamped with the child documents produced immediately after the parent document. Where an electronic document that is part of a family is withheld, and its relationship to the rest of that document family is indicated using slipsheets, the Producing Party shall provide one Bates-numbered slipsheet for each withheld document. For example, if a Party withholds an email as privileged while producing the attachment, the parent-child relationship may be maintained by using slip sheets containing unique Bates numbers and the grounds for withholding of the email will be similarly stated.

5.7     <u>Embedded Documents</u>: Embedded documents (e.g., a spread sheet embedded within a word processing document) will be extracted, produced as an independent document, and related back to the respective top-level parent document (e.g., standalone file, email message, tec.) via the "Beg Attach" and "End Attach" fields referenced in Exhibit A. Related embedded documents will be produced within a continuous Bates number range.

5.8     <u>Redactions</u>. Documents should only be redacted to protect privileged information, PII and PHI, and as required by reasonably applicable law or statute. To the extent that a responsive document contains any of the foregoing as well as information not so protected, the Producing Party must produce that document in redacted form. In the event a document is redacted, the full text should

be replaced with OCR text that excludes the redacted material. When a TIFF image is redacted, the TIFF image should show the word "redacted" where applicable and a production Load File field should be populated to indicate the document contains a redaction. If a document to be produced in native format requires redaction then it should be produced in redacted native format. The native file should show the word "redacted" where applicable and a production Load File field should be populated to indicate the native file contains a redaction. The Parties acknowledge that redacting the native may alter the metadata of the produced file; however, the metadata produced subject to Exhibit A will be the metadata extracted from the original native file, other than metadata containing redacted information. All documents withheld, in whole or in part (i.e., redacted), on the basis of any claim or privilege or applicable law or statute must be logged as set forth below.

## 6.   SEARCH TERMS

6.1      Search terms and methods.  The parties hereby agree that negotiations regarding search terms and other filtering methods are intended to be a cooperative and iterative process. Prior to conducting a search for responsive documents, regardless of the search methodologies to be employed, the parties shall meet and confer regarding the search methodologies the producing party proposes to employ to identify potentially responsive documents, and make such disclosures regarding their proposed search methodology that will permit the requesting party to evaluate the proposed methodology and enable meaningful meet and confers. To the extent that a producing party asserts that any of the search terms proposed by a requesting party, within a limit agreed to in good faith, are unreasonably overbroad or otherwise objectionable, and to enable meaningful meet and confer discussion, the producing party will produce hit reports

6.2      Custodial and non-custodial sources. The Parties met and conferred regarding potential custodians and non-custodial sources they believe should be preserved. The parties will agree on a reasonable number of custodians per party for whom ESI shall be preserved.

## 7.   INADVERTENT PRODUCTION

7.1      Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding.  For example, the mere production of

privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.

       7.2     If a Producing Party gives notice to Receiving Parties that it inadvertently produced documents, testimony, information, and/or things that are protected from disclosure under the attorney-client privilege, work product doctrine, and/or any other reasonably applicable privilege or immunity from disclosure (i.e., clawback), or the Receiving Party discovers such inadvertent production, the inadvertent production shall not be deemed a waiver of the applicable privilege or protection. Except to the extent necessary for the purpose of privilege challenge, the Receiving Party shall promptly return all copies of such documents, testimony, information and/or things to the inadvertently Producing Party and shall not use such items for any purpose except for the purpose of privilege challenge until further order of the Court. If the Receiving Party does not challenge the designation, such return must occur within ten (10) business days of receipt of notice or discovery of the inadvertent production. Any documents, testimony, information, and/or things subject to a clawback request by a Producing Party, but which are being retained by the Receiving Party for purposes of a challenge to the privilege designation must be maintained on an Outside Attorneys' Eyes Only basis for the duration of the challenge.

## 8.  PRIVILEGE LOGS

       8.1     Privilege logs shall be provided in Excel format and shall contain at least the following information for each responsive document withheld or redacted: (i) a sequential number associated with each privilege log record; (ii) the date of the document; (iii) the Bates numbers; (iv) the identity of persons who sent (and, if different, the identity of all persons who authored or signed) the document and the addressees, recipients, copyees, and blind copyees (with senders, signers, authors, addressees/recipients, copyees, and blind copyees, each separately identified by those categories), and identification of which of them are attorneys; (v) a description of the subject matter of the information contained in the document that, without revealing information itself privileged or protected, is sufficient to understand the subject matter of the document and the basis of the claim of privilege or immunity; (vi) the type or nature of the privilege asserted (i.e., attorney-client privilege or work product doctrine, and if such other privilege or immunity is asserted it shall be separately identified);

and (vii) an indication of whether the document has been redacted and produced or withheld in its entirety. If a producing party identifies portions of a document and redacts such portions of the document pursuant to this ESI Protocol, the producing party must log the fact of each document's redaction. A party asserting privilege over a chain of emails must assert privilege separately on the privilege log as to each portion of the email chain. The producing party shall also produce a key showing the job title(s) for all attorneys identified on that producing party's privilege log.

8.2     As an alternative to manually entering the information required in the section above, each producing party's privilege log may be generated by exporting objective metadata from the review tool used to identify privileged or work-product protected documents where the information within the review tool and the objective metadata provides the information required under the section above.

8.3     Should a receiving party be unable to ascertain whether or not a document contained on the log is privileged or have reason to believe a particular entry on the log is responsive and does not reflect privileged information, the parties shall meet and confer to attempt to cooperatively resolve the dispute. The producing party shall provide reasonable additional information for the receiving party to determine if the document has been properly withheld or redacted, but in no event is required to disclose information that may invade the identified privilege or reveal privileged information.

8.4     Communications involving Litigation Counsel and the parties need not be placed on a privilege log.[1] Communications or documents post-dating the commencement of this case on March 14, 2019 need not be placed on a privilege log.

8.5     The producing party may request to log privilege as to an entire category of documents as a single combined entry, but such a request must be made at least twenty-one (21) days prior to the due date for the privilege log. The parties shall meet and confer promptly to discuss that request in good faith. The receiving party has the right to reject such a request and require individualized logging of the documents, but such rejection may not be unreasonably made. Such a log shall be due on the date specified in the operative schedule ordered by the Court.

---

[1] As used herein, "Litigation Counsel" specifically includes outside litigation counsel and outside trial counsel for the Parties in this case, and any such attorneys that Align retained for, or consulted with relating to *3Shape Trios A/S v. Align Tech., Inc.*, U.S.D.C. D. Del. Case No. 18-1332-LPS, or any other antitrust or patent litigation involving Align and 3Shape.

### 9.  MODIFICATION

9.1     This Stipulated Order may be modified by a Stipulated Order of the parties or by the

Court for good cause shown.

**IT IS SO STIPULATED**, through Counsel of Record.

Dated: September 7, 2021                    Respectfully Submitted,

By:    /s/ Joseph R. Saveri
Joseph R. Saveri (SBN 130064)
Steven N. Williams  (SBN 175489)
Kevin E. Rayhill  (SBN 267496)
Keydon Levy (SBN. 281372)
**JOSEPH SAVERI LAW FIRM, INC.**
601 California Street, Suite 1000
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
jsaveri@saverilawfirm.com
swilliams@saverilawfirm.com
krayhill@saverilawfirm.com
klevy@saverilawfirm.com

Eric L. Cramer (pro hac vice)
Joshua T. Ripley (pro hac vice)
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-4604
Facsimile: (215) 875-5707
ecramer@bm.net
jripley@bm.net

Daniel J. Walker (pro hac vice)
**BERGER MONTAGUE PC**
2001 Pennsylvania Avenue, NW, Suite 300
Washington, DC 20006
Telephone: (202) 559-9745
Facsimile: (215) 875-5707
dwalker@bm.net

John Radice (pro hac vice)
April Lambert (pro hac vice)
Daniel Rubenstein (pro hac vice)
**RADICE LAW FIRM, P.C.**
475 Wall Street
Princeton, New Jersey 08540
Telephone: (646) 245-8502
Facsimile: (609) 385-0745
jradice@radicelawfirm.com
alambert@radicelawfirm.com
drubenstein@radicelawfirm.com

Daniel J. Mogin  (SBN 95624)
Jennifer M. Oliver (SBN  311196)
Timothy  Z. LaComb (SBN 314244)
**MOGINRUBIN LLP**
600 West Broadway, Suite 3300
San Diego, CA 92101
Telephone:    (619) 687-6611
Facsimile:    (619) 687-6610
dmogin@moginrubin.com
joliver@moginrubin.com
tlacomb@moginrubin.com

Gary M. Klinger (pro hac vice)
**MASON LIETZ & KLINGER, LLP**
227 W. Monroe Street, Suite 2100
Chicago, IL 60630
Telephone: (202) 429-2290
Facsimile: (202) 429-2294
gklinger@masonllp.com

David K. Lietz (pro hac vice)
**MASON LIETZ & KLINGER, LLP**
5101 Wisconsin  Ave., NW, Ste. 305
Washington,  DC 20016
Telephone: (202) 640-1160
Facsimile: (202) 429-2294
dlietz@masonllp.com

Kevin Landau (pro hac vice)
**TAUS, CEBULASH & LANDAU, LLP**
80 Maiden Lane, Suite 1204
New York, New York 10038
Telephone: (646) 873-7654
Facsimile: (212) 931-0703
klandau@tcllaw.com

[~~PROPOSED~~] STIPULATED ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION

*Counsel for Individual and Representative Plaintiffs*

Dated: September 7, 2021

By:      /s/ Steven A. Marenberg
Steven Arthur Marenberg (SBN. 101033)
James Pearl (SBN. 198481)
**PAUL HASTINGS LLP**
1999 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067
Telephone: (310) 553-6700
Fax: (310) 620-5899
Email:  stevenmarenberg@paulhastings.com
        jamespearl@paulhastings.com


Thomas A. Counts (SBN. 148051)
Abigail Heather Wald (SBN.309110)
**PAUL HASTINGS LLP**
101 California Street, 48th Floor
San Francisco, CA 94111
Telephone: (415) 856-7000
Fax: (415) 856-7100
Email:  tomcounts@paulhastings.com
        abigailwald@paulhastings.com

Adam M. Reich (SBN. 274235)
Michael Whalen (*pro hac vice*)
**PAUL HASTINGS LLP**
71 S. Wacker Drive, 45th Floor
Chicago, IL 60606
Telephone: (312) 683-6000
Fax: (312) 499-6100
Email:  adamreich@paulhastings.com

Noah Pinegar (*pro hac vice*)
**PAUL HASTINGS LLP**
2050 M Street, NW
Washington, DC 20036
Telephone: (202) 551-1960
Fax: (202) 551-1705
Email:  noahpinegar@paulhastings.com

*Attorneys for Defendant Align Technology, Inc.*


**IT IS ORDERED** that the forgoing Agreement is approved.

Dated:   9/7/2021

UNITED STATES ~~DISTRICT~~/MAGISTRATE JUDGE

THOMAS S. HIXSON

# Exhibit A: Specifications for the Production of Documents

### A.      Cover Letter and Delivery Media

Each production shall include a cover letter or cover email with information sufficient to: (i) identify all accompanying delivery media; (ii) identify the production on such media by assigning a Volume ID; and (iii) include the Bates range for the documents produced in each volume. Delivery media shall comply with the specifications below.

|  | Requirement: |
|---|---|
| **Delivery Media:** | USB hard drive, DVD and/ or CD-R (ISO9660 format) or a secure FTP site |
| **Encryption:** | All media should be encrypted |
| **Volume ID:** | CD set number, e.g. VOL1 |
| **Physical Media Label:** | TOP: <production name, volume number><br>MIDDLE: <Bates range><br>BOTTOM: <date> |
| **Number of Copies:** | 1 |

### B.      Deliverable Includes

| Item: | Requirement: |
|---|---|
| a)  **Load File (Metadata file)** | Concordance (.dat) |
| b)  **Image File** | Opticon (.opt) |
| c)  **Images** | • Group IV TIFF, 300 DPI, single-page TIFF images<br>• Color documents should be produced in JPEG format<br>• All black/white images must be in 1-bit TIFF images and color documents must be in 24-bit JPEG files<br>• All documents referenced in a production image load file shall have all corresponding images, text, and data<br>• All images in the delivery volume shall be contained in the image load file<br>• The image key shall be named the same as the Bates number of the page<br>• Every image will contain a unique Bates number, and a prefix that identifies the party producing the document<br>• The Bates numbers shall be sequential, and in a consistent font type, size, and spacing.<br>• Image file names cannot contain spaces, (e.g., the correct format would be AB00000001 not AB 00000001).<br>• If a Bates number or set of Bates numbers is skipped in a production, the producing party will so note in a cover letter or production log accompanying the production. |

| Item: | Requirement: |
|---|---|
| **d)  Text Files** | <ul><li>Extracted text of a document must be delivered on a document level</li><li>A text file will be provided for every document</li><li>For any document without extracted text or OCR, a text placeholder file will be inserted</li><li>All text for a single document should be contained within one file with subfolders</li><li>OCR shall be performed:<ul><li>For all redacted images</li><li>For all non-searchable electronic documents (including scanned hard copy documents) for which the text cannot be extracted.</li><li>Branding and endorsement shall be performed *after* OCR in the format agreed to by the parties.</li></ul></li><li>All text files should be named after the beginning Bates number of the document (ProdBatesBeg.txt)</li></ul> |
| **e)  Native Files** | <ul><li>Native file format for:<ul><li>Spreadsheets (e.g., MS Excel, Lotus 123, etc.)</li><li>Presentations (e.g., MS PowerPoint, etc.)</li><li>Database (e.g., MS Access, QuickBooks, etc.)</li><li>Drawing (e.g., Visio, CAD, etc.)</li><li>Audio and Video (e.g., QuickTime Movie, Windows Media Video Voicemails)</li></ul></li><li>All Native files should be named after the beginning Bates number of the document (BEGDOC.xls).</li><li>Documents produce in native format should be produced with a single page TIFF placeholder endorsed the Prod Beg Bates and the following language on the placeholder: "Document produced in native format."</li><li>Documents produced in native format should have a file path value for the native file in the "Native Link" metadata field.</li></ul> |
| **f)  Exception Handling** | A single-page TIFF placeholder should be used for each document within a family that was not converted and endorsed with the Prod Bates Beg. |
| **g)  Display Hidden Text** | Maintain and display hidden text (i.e., force on all hidden data). For example, track changes in MS Word, speaker notes in MS PowerPoint, and hidden rows in MS Excel. |
| **h)  Maintain Date and Time** | Maintains the date/time of the document as it was last saved, edited, etc., not the date of collection or processing (I.e., force off auto data). |

### C.    Directory Structure

The directory structure will contain the following main folders: DATA, NATIVE, TEXT, and IMAGES. Ex: Vol1\ NATIVE\000X\

| | Requirement: |
|---|---|
| **DAT File Location** | In subfolder: \DATA |
| **OPT File Location** | In subfolder: \DATA |

| | Requirement: |
|---|---|
| Images | In subfolder: \IMAGES<br>In sequentially numbered subfolders containing approximately 1000 images each (i.e. ..\Images\001 ) |
| Text Files | In subfolder: \TEXT |
| Native Files | In subfolder. i.e. \NATIVE |

**D.     Delimiters**

| | Requirement | |
|---|---|---|
| **Field Separator** | ASCII Code 20 ( ) | Separates load file columns |
| **Field Values** | ASCII Code 254 (þ) | Marks the beginning and end of each load file field (also known as a text qualifier) |
| **Multi-value** | ASCII Code 059 (;) | Separates distinct values in a column. This delimiter is only used when importing into a Relativity multi-choice field |
| **Newline** | ASCII 174 Code (®) | Marks the end of a line in any extracted or long text field |
| **Null Fields** | | If a Field has no value, leave blank |

**E.     Metadata**

| Field Name | Field Description | Format | File Type | Hard Copy |
|---|---|---|---|---|
| **AttachCount** | Number of attachment(s) | NUMERICAL | Populated for only. | Populated |
| **Author** | Original composer of document. | TEXT | Populated attachments and loose files. | |
| **Confidentiality** | Confidential status of document. | TEXT | Populated for messages, attachments and loose files. | Populated |
| **Conversation ID** | Email thread created by the email system. This is a 44-character string of numbers and letters that is created in the initial email and has 10 characters added for each reply or forward of an email. | TEXT | Populated for messages only. | |
| **Custodian or Source** | Name of custodian who possessed the document. | TEXT | Populated for messages, attachments and loose files. | Populated |

| Field Name | Field Description | Format | File Type | Hard Copy |
|---|---|---|---|---|
| **Custodian – All / All File Paths** | Name of all custodians who possessed the document and all other sources where the document was found. | TEXT | Populated for messages, attachments and loose files. | Populated |
| **Date Created** | Date from the date created property extracted from the original file or email message. | DATE (MM-DD-YYYY) | Populated for attachments and loose files. | |
| **Date Last Modified** | Date from the modified property of a document, representing the date and time that changes to the document were last saved. | DATE (MM-DD-YYYY) | Populated for attachments and loose files. | |
| **Date Received** | Date that the email message was received (according to original time zones). | DATE (MM-DD-YYYY) | Populated for messages. Attachments will inherit from the parent message. | |
| **Date Sent** | Date that the email message was sent (according to original time zones). | DATE (MM-DD-YYYY) | Populated for messages. Attachments will inherit from the parent message. | |
| **DocType** | Populated with: Email, Attachment, eDocPaper | TEXT | Populated for messages, attachments and loose files. | Populated |
| **Email BCC** | Recipients of 'blind carbon copies' of the email message. | TEXT | Populated for messages only. | |
| **Email CC** | Recipients of 'carbon copies' of the email message. | TEXT | Populated for messages only. | |
| **Email From** | Originator of the email message. | TEXT | Populated for messages only. | |
| **Email Subject** | Subject of the email message. | TEXT | Populated for messages only. | |
| **Email To** | List of recipients or addressees of the email message. | TEXT | Populated for messages only. | |
| **File Extension** | Three (or more) character extension of the document that represents the file type to the Windows Operating System. Examples are PDF, DOC, or DOCX. The file extension is identified by the file header vs. the file extension of the file name itself. | TEXT | Populated for messages, attachments, and loose files. | |

[PROPOSED] STIPULATED ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION

| Field Name | Field Description | Format | File Type | Hard Copy |
|---|---|---|---|---|
| **File Name** | Original name of the file. | TEXT | Populated for messages, attachments, and loose files. | |
| **File Size** | File size in kilobytes of native document. | DECIMAL | Populated for messages, attachments, and loose files. | |
| **MD5 Hash Value** | Identifying value of an electronic record that can be used for deduplication and authentication generated using the MD5 hash algorithm | TEXT | Populated for messages, attachments and loose files. | |
| **Original Folder Path** | Original folder path of file or folder name for paper documents. | TEXT | Populated for messages, attachments and loose files. | Populated |
| **Prod Bates Beg** | Beginning Bates number, or production number, on first page of document. | TEXT | Populated for messages, attachments and loose files. | Populated |
| **Prod Bates Beg Attach** | First Bates number in family group. | TEXT | Populated for messages and attachments. | Populated |
| **Prod Bates End** | Bates number, or production number, on last page of document. | TEXT | Populated for messages, attachments and loose files. | Populated |
| **Prod Bates End Attach** | Last Bates number in family group. | TEXT | Populated for messages and attachments. | Populated |
| **Redactions** | Redaction status of document. | TEXT | Populated for messages, attachments and loose files. | Populated |
| **Time Created** | Time from the Date Created property extracted from the original file or email message. | TEXT (hh:mm:ss) | Populated for attachments and loose files. | |
| **Time Last Modified** | Time from the Modified property of a document, representing the date and time that changes to the document were last saved. | TEXT (hh:mm:ss) | Populated for attachments and loose files. | |
| **Time Received** | Time that the email message was received (according to original time zones). | TEXT (hh:mm:ss) | Populated for messages. Attachments will | |

| Field Name | Field Description | Format | File Type | Hard Copy |
|---|---|---|---|---|
| | | | inherit from the parent message. | |
| **Time Sent** | Time that the email message was sent (according to original time zones). | TEXT (hh:mm:ss) | Populated for messages. Attachments will inherit from the parent message. | |
| **Title** | Title information saved in metadata with document. | TEXT | Populated for attachments and loose files. | |
| **Native Link** | Link to Native File. Native files should be named the same as the beg doc and delivered in the same folder as the images (e.g., ABC0000001.xls). | TEXT | Populated for attachments and loose files. | Populated |
| **Text Link** | Link to Text Files. Text files should be named the same as the beg doc and delivered in the same folder as the images (e.g., ABC0000001.txt). | TEXT | Populated for attachments and loose files. | |

[PROPOSED] STIPULATED ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION