UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIMON AND SIMON, PC, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>ALIGN TECHNOLOGY, INC.,<br><br>  Defendant. | **DISCOVERY ORDER**<br><br>Case No. 20-cv-03754-VC   (TSH)<br><br>Re: Dkt. No. 136 |
| MISTY SNOW, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>ALIGN TECHNOLOGY, INC.,<br><br>  Defendant. | Case No. 21-cv-03269-VC   (TSH)<br><br>Re: Dkt. No. 134 |

In 20-3754, Plaintiffs sue Align under 15 U.S.C. § 2 for monopolizing the markets for aligners and scanners. 20-3754 ECF No. 29 (First Amended Complaint). The operative complaint in 21-3269 is more complicated. It alleges that Align violated sections 1 and 2 of the Sherman Act with respect to the market for aligners, and it adds a bunch of state law claims. 21-3269 ECF No. 99. For discovery purposes, the important point is that none of these claims reach conduct outside of the United States.

Because Align is an international business, it has a legitimate reason to limit document review to documents that are likely to be evidence of conduct in the United States. The most common way of doing this is by choosing custodians whose work involves the U.S. market, but that's not necessarily the only way. Here, for most of the search strings it agreed to run, Align

included geographic limiters in the string, such as "/25 ('USA' or U.S.A. or 'US' or U.S. or 'United States' or 'North America' or America* or 'NA')." In other words, an email that hit on any other term in the search string would be reviewed only if it also had one of the geographic limiters in it.

For example, search string 1 is:

> (("trade show" OR "tradeshow" OR "dental show" OR "AACD" OR "AAO" OR "CDS" OR "DLOAC" OR "GNYDM" OR Hinman OR "Lab Day East" OR "Lab Day West" OR "Pacific Dental Conference" OR "Yankee Dental" OR "IDS" OR "ADA" OR "CAD/CAM Conference" OR "California Dental Association" OR "CDA" OR "Greater New York Dental " OR "Southwest Dental Conference" OR "Academy of General Dentistry" OR "AGD" or "Smiles at Sea" or "Mid- Continent Dental" OR "MCDC" OR "Rocky Mountain Dental Convention" OR "RMDC" OR "YDC" or Midwinter OR "CDS" OR "Pacific Northwest Dental Conference" OR "PNDC" OR "Star of the North" OR "TDA" or "NODC" OR "AAOMS" OR "Kois") w/7 (itero OR "IOS" OR scanner* OR Invisalign OR Cadent OR aligner OR competit* OR trios OR 3Shape OR 3-shape OR promo)) /25 ("USA" or U.S.A. or "US" or U.S. or "United States" or "North America" or America* or "NA")

Plaintiffs' Exhibit 1 (ECF No. 136-1[1]) is a list of the full search strings used. The geographic limiters are in strings 1-3, 5-8, 9A, 9B, 10-13, 17, SS1 and SS5. They are not in strings 4, 14, 15, 16, 19, SS2, SS3, SS4, SS6 or SS7. (There is no string 18.)[2]

Plaintiffs say they agreed to the use of geographic limiters, reserving their right to challenge them later, because Align assured them that its employee email signatures typically contain one or more of the geographic limiters at issue. As examples of this, Align has cited emails sent by its VP Finance Americas; SVP & Managing Director, The Americas; Director, Marketing & Education, iTero North America; and Vice President and General Manager, US. ECF No. 137-7. In those example emails, the employees' signature blocks were in the emails, and they contained the geographic limiters, which were in the employees' titles. (In these examples, America* and US were the limiters that were hit.) However, from a review of the documents that

---

[1] All further ECF cites are to 20-3754.

[2] As Align explained at the hearing, just because a document hits on a search string does not mean it gets produced. Rather, the search string results become a corpus of documents that is then screened for privilege and subject to human and Technology Assisted Review for responsiveness.

Align has produced to date, Plaintiffs now assert that Align employee emails "almost always have either no signature at all or signatures without geographic limiters," and Plaintiffs provide a few examples of that. ECF No. 137-4. Plaintiffs assert that the problem is widespread among Align's custodians at all levels of the company.

Align's interest in pressing the argument that the email signatures justify the use of geographic limiters has waned over time. The Court has no evidence before it of what Align initially represented to Plaintiffs about the email signatures. But in a March 14, 2022 letter, Plaintiffs took issue with the limiters, stating:

> Most pressing, it appears that Align's use of geographic limitations in its search strings was improper. You will recall that during the search term negotiations, Plaintiffs repeatedly objected to Align's proposal to use geographic limitations out of a concern that relevant documents would be excluded simply because they did not contain one of those geographic terms. Align nevertheless insisted that these limitations were appropriate, and you further asserted that these limiters were unlikely to exclude relevant documents because Align's documents would contain the appropriate geographic terms. Further, you assured us that Align has "geographic designations" for employees such that employee email signatures typically contain one of more of the geographic limiters. Upon review of Align's production, your assertions appear to be wrong.
>
> Align employees' emails—especially "reply" emails—often have no signature at all. And when Align employees' emails do have signatures, they very rarely contain any of the geographic limiters.

ECF No. 137-3

Align responded in an April 8, 2022 letter that downplayed the email signatures. Align emphasized that "the inclusion of geographic terms to focus search strings on the United States (the only relevant geography here) is critical for identifying documents that specifically discuss the United States as opposed to exclusively discussing other regions and geographies." ECF No. 137-7. Align added that "[d]espite the limited relevance of signature blocks to the propriety of the geographic limiters . . . Align does in fact frequently use geographic terms in email signatures . . ." *Id*. Align asserted that the use of signature blocks was "sufficiently widespread" to address Plaintiffs' concerns, but acknowledged that "this usage is not universal." *Id*.

In the joint discovery letter brief that was filed on June 27, 2022, Plaintiffs make the strong factual assertion that "Align's employee emails *almost always* have either no signature at all or

3

1  signatures without the geographic limiters." (emphasis added).  That's a bold claim.  Align's
2  section of the letter brief does not respond, and in fact makes no mention whatever of the email
3  signatures.  At the hearing this morning, the Court asked Align if it has abandoned the email
4  signature argument.  One of Align's lawyers said no, but when pressed by the Court about what
5  percentage of Align's emails contain a signature block that has a geographic limiter in it, said
6  Align was not able to make any representation about that.  (Later in the hearing another attorney
7  for Align called the email signatures a "red herring.")  Because Align is not able to make any
8  representation about how often its employees' email signatures with geographic limiters appear in
9  Align emails, the Court cannot accept that the email signatures are a valid reason for using the
10 geographic limiters.

11       The Court now turns to Align's remaining arguments.  First, Align argues that "the most
12 logical limitation was to constrain [the search terms] to the relevant alleged market geography –
13 the United States.  This made the addition of geographic limiters eminently reasonable and
14 proportionate."  Let's think about that.  Are the geographic limiters a good way of identifying
15 documents that are relevant to U.S. conduct as opposed to conduct abroad?  The answer is no.
16 When U.S. employees email each other about conduct that is relevant to this case, there is no
17 reason to expect they would explicitly refer to the U.S. in their emails.  That's just not how people
18 write.  They *might* refer to the U.S. if, for example, they mean to distinguish the U.S. from
19 elsewhere or if they are talking about a document that has "U.S." in the title.  But in general, when
20 people within the same country email each other, they don't normally put the name of the country
21 they're in in the email.  People say things like:  "Hey, team.  Have you seen the recent analysis of
22 our Invisalign sales?  Great job, everyone!"  They don't usually say things like:  "Hey, fellow
23 U.S.-based employees.  Have you seen the recent analysis of our Invisalign sales?  Great job,
24 Americans!"

25       Imagine a smoking gun email, of the type Plaintiffs are most hoping to find in discovery.
26 Something like:  "Are you promoting scanners at the upcoming trade show?  Now that people
27 have no choice but to buy from us, selling will be easier than ever!"  Or something like:  "Did you
28 read that white paper about our Invisalign sales?  Now that we're the only game in town, we're

1  doing great!" In the absence of the geographic limiters, those emails would have hit on string 1
2  (first example) and string 3 (second example). But since both strings contain the limiters, these
3  hypothetical emails would not hit on either string, or, as far as the Court can tell, any of the other
4  search strings Align used or that it proposes as a compromise.

5  The point is not these two hypothetical emails, which the Court dreamed up. The point is
6  the more basic one that when Americans email each other about things that are happening in this
7  country, they don't usually put the word "America" or "United States," or some other variant of
8  that, in the email. As a result, the geographic limiters are a random, arbitrary limit on discovery,
9  unrelated to whether documents are relevant to the case. Plaintiffs also have a persuasive
10 argument that the geographic limiters perversely skew document production toward international
11 documents because Align employees tend to mention the names of countries when they are talking
12 about global business operations. Emails about a trade show in California may not contain an
13 explicit mention of the "United States" because everyone knows what country California is in. By
14 contrast, emails about global sales projections are quite likely to have references to the U.S. or
15 North America (and Europe, Latin America, and so on). Accordingly, the geographic limiters
16 cannot be understood as even a rational attempt to target document collection to conduct that
17 occurred in the U.S.

18 Second, Align argues that Plaintiffs are attempting to reopen settled search terms and that
19 they raised this issue only after Align made a substantial document production. However, Align
20 does not demonstrate that the search terms were settled, at least not with these Plaintiffs, and as
21 noted above, for at least three months Plaintiffs have been objecting to the use of the geographic
22 limiters. While the Court does not know exactly what Align initially represented about the email
23 signatures, it does appear from Align's own correspondence that it had initially presented some
24 story about how the email signatures were at least a partial justification for the limiters. There was
25 no way for Plaintiffs to determine the impact of the geographic limiters until they saw Align's
26 document production. Only then did Plaintiffs see whether or not it was true that Align's
27 employees normally had signature blocks in their emails and whether those signature blocks
28 contained the geographic limiters. Thus, the Court does not believe Plaintiffs have inappropriately

delayed raising this issue.

Third, Align argues that it has produced more than 250,000 documents and millions of lines of data, and that Plaintiffs' demand would require Align to review an additional 570,000 documents. However, raw numbers like that miss the point, which is that the geographic limiters are an arbitrary limitation on discovery. The fact that a litigant has produced a million emails does not allow it to limit its document production to emails that were sent on Mondays, Wednesdays and Fridays. Volume is not an excuse for arbitrary search parameters. The requirement that a document had to explicitly reference the United States in the text of the document before it would hit on a search string is a random limit on discovery. It was not a rational way to attempt to limit discovery to U.S.-based conduct, for the reasons explained above.

Fourth, Align argues that it placed no geographic limitations on five search strings that it says are highly relevant to the case, and Align makes a compromise proposal that it will remove the geographic limiters for certain other search strings. However, Align has not explained why the geographic limiters would be appropriate in any search string.

Finally, Align argues that the geographic limiters are necessary because without them the other search terms were too broad.[3] But this is a repetition of the third argument and ignores the fact that the geographic limiters are an arbitrary limit on discovery.

The Court grants Plaintiffs' motion to compel and orders Align to re-run the search strings without the geographic limiters.

**IT IS SO ORDERED.**

Dated: July 1, 2022

THOMAS S. HIXSON
United States Magistrate Judge

---

[3] At the hearing Align stated that if the Court excises the geographic limiters, Align may want to revisit some of the other terms in those search strings. Align is free to do so. The only issue briefed to the Court was the use of the geographic limiters; the Court expresses no view on the other search terms. However, if Align seeks to revisit other search terms, it must do so expeditiously. The parties should promptly meet and confer, and if they have any disputes, they should file a joint discovery letter brief.

6