UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIMON AND SIMON, PC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ALIGN TECHNOLOGY, INC.,<br><br>Defendant. | Case No. 20-cv-03754-VC   (TSH)<br><br>**ORDER GRANTING MOTIONS FOR ISSUANCE OF A LETTER OF REQUEST**<br><br>Re: Dkt. No. 150, 154 |

## I. INTRODUCTION

Plaintiffs Simon and Simon, PC d/b/a City Smiles and VIP Dental Spas ("Plaintiffs") request the Court sign and issue three Letters of Request for International Judicial Assistance pursuant to the Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters ("Hague Evidence Convention"), under which the Court will request that the relevant judicial authority in England compel the deposition of Raphael Pascaud (ECF No. 150), the relevant judicial authority in Denmark compel the deposition of Allan Hyldal (ECF No. 154), and the relevant judicial authority in Sweden compel the deposition of Nikolaj Deichmann (ECF No. 154). Defendant Align Technology, Inc. does not oppose the requests. ECF Nos. 152, 155. The Court finds these matters suitable for disposition without oral argument. *See* Civ. L.R. 7-1(b). Having considered Plaintiffs' requests, the Court **GRANTS** the motions for the following reasons.

## II. BACKGROUND

### A. Factual Background

A detailed factual background of this case can be found in Judge Chhabria's April 8, 2021 order denying Align's motion to dismiss. ECF No. 91; *Simon & Simon, PC v. Align Tech., Inc.*, 533 F. Supp. 3d 904, 908 (N.D. Cal. 2021). Summarizing from that order, this case involves

1  Invisalign, a dental aligner that dentists sell patients to straighten their teeth. Plaintiffs are dental
2  practices that use iTero scanners to offer Invisalign to their patients. According to Plaintiffs,
3  Align has a monopoly in the aligner market as well as the market for scanners that are used to
4  produce aligners. They allege Align engaged in a multifaceted scheme to stifle competition in
5  these markets, including designing its iTero scanner so that it can only be used to order Invisalign.
6  Thus, if a dental practice wishes to offer Invisalign to patients, it is allegedly limited as a practical
7  matter to using the iTero scanner to generate those orders. Meanwhile, the only other scanner that
8  is aligner-specific— 3Shape's Trios—cannot be used to order Invisalign because Align will not
9  accept scans from Trios. That was not always the case, as in December 2015, Align and 3Shape
10 entered an "interoperability agreement" and built an interface that allowed dentists to use Trios
11 scans to order Invisalign. However, Align announced in December 2017 that it would terminate
12 the interoperability agreement with 3Shape, which Plaintiffs allege was calculated to help Align
13 achieve the entrenchment of Invisalign's monopoly power in the aligner market.

**B.     Letters of Request**

   **1.     ECF No. 150 (Raphael Pascaud)**

Raphael Pascaud is a resident of Woodlesford, England, and was a former executive for Align from October 2010 through September 2019. Radice Decl. ¶¶ 5-6, 11 & Ex. C (Pascaud's Linkedin.com page), ECF No. 150-1. From 2015 through 2019, he held multiple titles: VP and GM for Align's iTero business unit, and chief marketing officer for the company, and in 2019 he was appointed SVP of business development and strategy. *Id.*, Ex. C. Pascaud's Linkedin.com page states he had "[g]lobal operational responsibilities for iTero Scanning & Services business unit" and was "[r]esponsible for global growth strategy, customer experience, brand equity, professional marketing and consumer demand, portfolio innovation and business development." *Id.*

Plaintiffs maintain that "[i]t is clear from the documents produced by Align in this case that Mr. Pascaud was involved in the negotiation of the interoperability agreement with 3Shape, its implementation, and its termination. Mr. Pascaud was involved in decisions to allow or deny interoperability with other Scanner manufacturers, and Mr. Pascaud also appears to have had a

2

significant role in the creation, execution, and analysis of discount programs and in the negotiation and approval of contracts with dental support organizations (DSOs)." ECF No. 150 at 2; Radice Decl. ¶ 7.

Plaintiffs' U.S. counsel retained an English lawyer to assist with drafting the Letter of Request. ECF No. 150 at 2; Radice Decl. ¶ 8. They argue Pascaud's background makes his testimony directly relevant in this case. They also note that he as he has authored numerous documents surrounding the key events in this case, and it is therefore important that they examine him on these documents. Plaintiffs seek to question Pascaud on the following topics:

I. Align's interoperability agreement with 3Shape, including:

- Align's motivation to enter into the agreement;
- The negotiation of the agreement;
- Align's requests for 3Shape to make its Scanner exclusive to only order Invisalign;
- Align's decision to terminate the agreement.

II. Align's interoperability or non-interoperability with other Scanner and Aligner manufacturers, including:

- The design of Align's Scanners.
- Why Align would have considered interoperability with certain Scanners and not others.

III. Business and financial topics relating to Scanners and Aligners.

- Marketing and sales of, and financial results for, iTero Scanners.
- Marketing and sales of, and financial results for, Invisalign Aligners.

IV. Align's contractual programs and policies relating to sales and pricing of Aligners and Scanners, including:

- Fusion program;
- Advantage program;
- Other discount programs;
- Dental support organization ("DSO") contracts; and
- Align's general policies and strategies with discount programs

ECF No. 150, Ex. A (Letter of Request).

As noted above, Align does not oppose the request. Align also states Pascaud has authorized it to respond on his behalf that he would waive any objections to the issuance of the proposed letter of request on certain conditions, including that (1) he get to choose the time and

3

place of the deposition, (2) questioning be limited to the subject matters identified the letter, and (3) the deposition is limited to seven hours, which would include questioning by the plaintiffs in a related case, *Snow v. Align Technology, Inc.*, Case No. 3:21-cv-03269-VC.[1] *Id.* It also states it has secured authority from Pascaud to

> (i) waive any objections to the issuance of the proposed Letter of Request by a Court in the United Kingdom, and (ii) accept service of the Letter of Request, once issued, directed to Mr. Pascaud on the condition that: (a) the deposition will be held at a time and place of his choosing in advance of the discovery cut-off dates in these cases, (b) questioning at the deposition be limited to the subject matters identified in Exhibit A to the Letter of Request (Dkt. No. 150-2) and (c) would be subject to the conditions set forth in the following paragraph (i.e., that absent further consent by Mr. Pascaud, the deposition is limited to 7 hours of questioning which would include questioning by both the *Simon & Simon* and the *Snow* Plaintiffs (and appropriate questioning by Align's attorneys as permitted by law).

Statement of Non-Opposition, ECF No. 152 at 2-3. Align argues these requirements are reasonable as Plaintiffs' motion represents that if the requested relief were granted, "[t]he burden and expense for Mr. Pascaud would be minimal. He would have to appear at a deposition for one day, for a maximum of seven hours of questioning." *Id.* at 2 (quoting ECF No. 150 at 12). Align also argues such requirements would be consistent with the past representations of the *Snow* Plaintiffs that they agree to coordinate depositions in their matter with this case. *Id.* (citing 21-cv-03269, ECF No. 31 ("The parties intend to coordinate depositions with the plaintiffs in the *Simon and Simon, PC v. Align Technology, Inc.* No. 3:20-cv- 03754-VC (N.D. Cal.) matter. A deponent will not be subject to duplicative depositions in this action and the *Simon and Simon* action absent agreement of the parties and the deponent or good cause."). Align states it would oppose a request for multiple days of deposition testimony from Pascaud without good cause as inconsistent with the Plaintiffs' prior representations. *Id.* at 3.

**2.    ECF No. 154 (Allan Hyldal and Nikolaj Deichmann)**

Hyldal is a resident of Copenhagen, Denmark and former Senior Vice President,

---

[1] As Judge Chhabria previously noted, the allegations in *Snow v. Align Technology, Inc.*, mirror those brought in this case. *See Snow et al. v. Align Tech., Inc.*, Case No. 3:21-cv-03269-VC, ECF No. 96 (Order Denying in Part and Granting in Part Mot. to Dismiss).

4

Orthodontics of 3Shape. ECF No. 154 at 1; Lacomb Decl. ¶ 6, ECF No. 154-1. Deichmann is a resident of Malmo, Sweden and Co-Founder and Co-Vice Chairman of 3Shape. *Id.* (both). Plaintiffs state that both Hyldal and Deichmann can provide relevant testimony for this action as they were involved in the negotiation, implementation, operation, and termination of the interoperability agreement in the United States, as well as the continued use of the interoperability agreement outside the United States. They are also knowledgeable about the intraoral scanner market and the use of 3Shape scanners to scan for non-Invisalign branded clear aligners. ECF No. 154 at 1-2. Plaintiffs maintain they can provide relevant testimony concerning:

> (i) the inception of the relationship between Align and 3Shape, including creation of the interoperability agreement; (ii) the change in philosophy at Align concerning interoperability, which went from exclaiming the benefits of interoperability to eliminating it; (iii) whether Align terminated a profitable course of dealing when terminating the interoperability agreement; (iv) actions and negotiations surrounding termination of the interoperability agreement; (v) sales efforts by Align of 3Shape customers following termination of interoperability; (vi) output effects at 3Shape caused by termination of interoperability; and (vii) the validity of patent infringement claims by Align against 3Shape.

ECF No. 154 at 3.

Plaintiffs' counsel has retained counsel experienced in civil antitrust litigation in Denmark and Sweden to ensure the depositions of Hyldal and Deichmann will be conducted in a manner that conforms to applicable local law. *Id.* Local counsel requested the voluntary appearance for deposition of Hyldal and Deichmann, sending each a letter on September 28, 2022 requesting a response within five days of receipt. *Id.* Delivery of the letter to Hyldal occurred on September 29, 2022, to which no response has been received. ECF No. 154 at 3-4; Lacomb Decl. ¶ 10. Delivery to Deichmann occurred on October 6, 2022, but, according to Plaintiffs, counsel for 3Shape has informed their counsel that 3Shape does not oppose this motion, but it would not be making him available for a voluntary deposition. ECF No. 154 at 4; Lacomb Decl. ¶ 10.

Plaintiffs seek to question Hyldal and Deichmann on the following topics:

I. Align's interoperability agreement with 3Shape, including:
- Align's stated motivation to enter into the interoperability agreement;
- The negotiation of the interoperability agreement;

5

- The economic success of the interoperability agreement for 3Shape and Align;
- Align's requests to make 3Shape's Scanner exclusive so that it could only order Invisalign;
- Align's decision to terminate the interoperability agreement;
- Align's change of attitude toward interoperability in general;
- Align's communications with 3Shape customers following termination of the interoperability agreement;
- The economic impact of termination of the interoperability agreement for 3Shape and Align; and
- Align's patent suit against 3Shape.

II. Interoperability between Align and 3Shape outside of the US, including the sales and output effects resulting from that agreement.

III. Intraoral scanner and aligner markets, including the use of 3Shape scanners to scan for non-Invisalign branded clear aligners.

Lacomb Decl., Exs. A & B.

On October 7, 2022, Plaintiffs and Align filed a stipulation requesting an order shortening the time for a hearing on Plaintiffs' motion, stating that Align does not oppose the motion and the parties do not anticipate any additional briefing. ECF No. 155.

### III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 28(b)(1)(B), parties my take depositions in a foreign country upon the issuance of a letter of request from the federal court. *See also Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 n.1 (2004) (A letter of request or letter rogatory "is the request by a domestic court to a foreign court to take evidence from a certain witness."). "Judges in this district have held that motions requesting issuance of a letter of request or letter rogatory should generally be granted and that '[t]he opposing party must show good reason for a court to deny an application for a letter rogatory.'" *Successor Agency to Former Emeryville Redevelopment Agency v. Swagelok Co.*, 2020 WL 7042860, at *2 (N.D. Cal. Dec. 1, 2020) (quoting *S.E.C. v. Leslie*, 2009 WL 688836, at *2 (N.D. Cal. Mar. 16, 2009)); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2014 WL 4954634, at *2 (N.D. Cal. Oct. 1, 2014). Like all discovery, motions for letters of request are subject to the standards of Rule 26(b), which provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b); *Successor Agency to Former Emeryville*

*Redevelopment Agency*, 2020 WL 7042860, at *2.  "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b).

The United States, the United Kingdom, Denmark, and Sweden are all signatories to the Hague Evidence Convention, which permits "the transmittal of a letter rogatory or request directly from a tribunal in the United States to the foreign or international tribunal, officer, or agency to whom it is addressed and its return in the same manner."[2]  28 U.S.C. § 1781(b)(2); *see also* 23 U.S.T. 2555; *Life Bliss Found. v. Sun TV Network Ltd.*, 2014 WL 12598859, at *4 (C.D. Cal. May 8, 2014).  Under the Hague Evidence Convention, a request for discovery is sent by a court to the "Central Authority."  *See* Hague Evidence Convention, art. 2.  The Central Authority for England and Wales is the Senior Master for the attention of the Foreign Process Section of the Royal Courts of Justice, Room E16, Royal Courts of Justice Strand, LONDON WC2A 2LL.[3]  The central authority for Denmark is the Ministry of Justice, Procedural Law Division, Slotsholmsgade 10, 1216 Copenhagen, Denmark.[4]  The central authority for Sweden is the Senior Master for the attention of the Division for Criminal Cases and International Judicial Co-operation, Ministry of Justice, S-103 33 Stockholm, Sweden.[5]

## IV.   DISCUSSION

Given the liberal standard for issuance of letters of request, the Court finds Plaintiffs have met their burden of showing the letters should be issued.  Plaintiffs have shown that Pascaud, Hyldal and Deichmann were involved with the creation, operation, and termination of the interoperability agreement and its continued operation outside of the United States, as well as relevant actions by Align before and after the interoperability agreement was in place.  Their testimony is, therefore, relevant to this action.  *See, e.g.*, *Zoho Corp. Pvt. Ltd v. Freshworks, Inc.*, 2021 WL 2769009, at *3 (N.D. Cal. July 2, 2021) (granting motion for letter of request despite

---

[2] *See* Hague Evidence Convention, Status Table - 20: Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters (last updated June 17, 2021), https://www.hcch.net/en/instruments/conventions/status-table/?cid=82.
[3] *See* https://www.hcch.net/en/states/authorities/details3/?aid=526
[4] *See* https://www.hcch.net/en/states/hcch-members/details1/?sid=25
[5] *See* https://www.hcch.net/en/states/hcch-members/details1/?sid=72

7

defendant's objections that plaintiff was not diligent in pursuing the discovery and that it was duplicative of other discovery from defendant, citing "the liberal standard for issuance of letters of request" and the relevance of the information sought); *Successor Agency to Former Emeryville Redevelopment Agency*, 2020 WL 7042860, at *2 (issuing letter of request over several objections, citing that the "requested discovery is highly relevant to the central issue" in the case and that "plaintiffs' proposed deponents appear likely, by virtue of their former positions and responsibilities, to have personal knowledge regarding various relevant issues").

The Court also notes that any burden and expense would be minimal. The deponents would have to appear at a deposition for one day, for a maximum of seven hours of questioning. Plaintiffs also state they will comply with "considerations of comity," noting they have retained local counsel to ensure the proceedings comply fully with the relevant country's laws. As to Pascaud, Align has indicated he will waive any objection subject to the conditions listed above, and Plaintiffs did not file any objection to those conditions.[6] As to Hyldal and Deichmann, Align does not oppose Plaintiffs' request and has requested no additional conditions.

Finally, the Court notes that these depositions would allow Plaintiffs the opportunity to question percipient witnesses and to test the veracity of the defendants' representations. Thus, it does not appear that the discovery sought from these third parties would be duplicative of any previous production. *See Zoho Corp. Pvt. Ltd*, 2021 WL 2769009, at *4 (granting motion for letter of request, despite defendant's objection that third party discovery would be duplicative, because "[t]here is no guarantee that the third parties do not have relevant information, and Zoho should not have to take Freshworks' word for it."); *Successor Agency to Former Emeryville Redevelopment Agency*, 2020 WL 7042860, at *3 (rejecting argument that granting letters of requests would result in duplicative discovery, noting: "The proposed foreign deponents . . . will likely have a different perspective on the relationship . . . and different personal knowledge regarding these companies' corporate activities and involvement in the . . . acquisition and restructuring."); *Fisher & Paykel Healthcare Ltd. v. Flexicare Inc.*, 2020 WL 5900155, at *2

---

[6] To the extent the parties disagree to these conditions, they shall comply with the undersigned's Discovery Standing Order.

(C.D. Cal. Aug. 17, 2020) ("There is no guarantee that FPH's existing production or its Rule 30(b)(6) testimony is a perfect replacement for the inventors' own testimony and discovery) (citing *Dyson, Inc. v. SharkNinja Operating LLC*, 2016 WL 5720702, at *2 (N.D. Ill. Sept. 30, 2016), *objections overruled,* 2017 WL 446042 (N.D. Ill. Feb. 2, 2017) (rejecting argument that testimony would be cumulative because "[t]here is no guarantee that the remaining co-inventors will have the same memory of the invention process, and [defendant] should not have to take [plaintiff's] word for it")). Regardless, "there is no requirement that a third party must be able to provide unique information in order to depose them." *Zoho Corp. Pvt. Ltd*, 2021 WL 2769009, at *4 (citing *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2014 WL 4954634, at *4 (finding letter of request would not result in duplicative discovery because "the ordinary rules of relevance in discovery, and Rule 30's grant of authority for a deposition of 'any person, including a party'" show that a party does not have to provide "unique information.")).

## V.   CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiffs' motions. The Court adopts the Letters of Request attached as Exhibit A to the Declaration of John Radice and Exhibits A and B to the Declaration of Timothy Lacomb. The Clerk of Court shall file the executed letter as an attachment to this Order.

**IT IS SO ORDERED.**

Dated: October 27, 2022

THOMAS S. HIXSON
United States Magistrate Judge