UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIMON AND SIMON, PC, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>ALIGN TECHNOLOGY, INC.,<br><br>    Defendant. | Case No. 20-cv-03754-VC   (TSH)<br><br>**DISCOVERY ORDER**<br>Re: Dkt. No. 241 |

We are here on a joint discovery letter brief in which Align Technology, Inc., moves to compel on 13 document requests that were contained in a subpoena it served on Envista Holdings Corporation. ECF No. 241. The subpoena was served in the Central District of California, where Envista is headquartered, but Envista has stipulated to adjudicate the dispute before this Court, where the underlying action is pending. The Court held a hearing on January 17, 2023 and now issues this order.

By way of background, Plaintiffs in this case bring two antitrust claims against Align. They allege that Align monopolized the market for clear aligners for straightening teeth and, separately, the market for intraoral scanners used to configure aligners, to the exclusion of competitors, including through the use of exclusionary contracts with certain Dental Service Organizations ("DSOs"). Among its other products, Envista sells braces, aligners, and intraoral scanners, including to DSOs. Align maintains that Envista therefore has information relevant to Align's alleged monopoly power in both markets and to Align's alleged exclusionary conduct as to the DSOs.

The parties did not attach the subpoena to the joint discovery letter brief, but they jointly summarize the requests for production ("RFPs") on the first page, and the Court will assume the summary is accurate. Align moves to compel the following from Envista:

- RFPs 1, 2 and 3: Documents sufficient to show, by year and by quarter, the cost of goods sold for Envista's braces, intraoral scanner, and clear aligner products.
- RFPs 7, 9, 10, 11, 12 and 47: Annual strategy plans for Envista's clear aligner, braces, and scanner products and its strategic plans related to entering aligners and acquiring the intraoral scanner business of Carestream Dental for approximately $600 million.
- RFPs 35, 36 and 37: Transaction-level data for U.S. sales of Envista's intraoral scanner, clear aligner and braces products.
- RFP 19: Information about Envista's sales of intraoral scanner, clear aligner, and braces to DSOs, as well as exemplar agreements.

Align says its motion to compel is limited to its offer of compromise in Exhibit 1 to the joint discovery letter brief. As relevant here, that means Align is seeking materials only from finance databases or central files. Align is not seeking custodial files.

For RFPs 35, 36 and 37, Align articulates two theories of relevance. First, information showing that customers switched between Envista's braces and aligners is relevant to market definition because it may show that braces and aligners are or are not reasonably interchangeable. Second, information showing switching between brands of aligners (such as doctors switching from using Align aligners to Envista aligners) is relevant to Align's alleged monopoly power. Envista does not dispute the relevance of this data. Rather, during meet and confer, it offered to provide this data in anonymized form, but anonymized in such a way that Align could cross-reference braces and aligner customers to see if they switched (which really only addresses Align's first theory of relevance).

Align's two theories of relevance appear to implicate two different types of customers with different confidentiality concerns. The first theory implicates end users who buy and wear braces or aligners. These are ordinary people from all walks of life, some substantial number of whom

2

are probably minors, and whether they had their teeth straightened is private medical information. These people's names should be kept confidential. Align doesn't need to know who they are, just if they switched between Envista's braces and aligners. Envista's proposal to anonymize these names in a manner that allows Align to determine if they switched between those products is acceptable.

Align's second theory of relevance appears to implicate doctors. The names of doctors who prescribe aligners or braces is not private medical information because this is their job. Rather, this information is competitively sensitive because it would tell Align which doctors are working with the competition. However, whether doctors switch from selling Align's products to selling Envista's competing products does seem important to determining whether Align has monopoly power. Similarly, whether a given dental practice sells *both* Align's products and Envista's competing products is probative of whether Align has monopoly power. Align has available to it the names of the doctors who sell its products, but the only way it can learn which doctors work with Envista is from Envista; there is no other practical way to obtain this information. Accordingly, under Rule 45(d)(3)(C), Align has justified obtaining this transactional data without the doctors' names being anonymized. The Court observes that there is a protective order in place that should prevent Align from misusing this information.

Accordingly, Align's motion to compel as to RFPs 35, 36 and 37 is **GRANTED IN PART** and **DENIED IN PART** as stated above.

For RFPs 1, 2 and 3, Align seeks COGS information for Envista's braces, intraoral scanner and clear aligner products. Together with the transactional data sought by RFPs 35, 36 and 37, Align can then derive Envista's profit margins. (Align includes braces in this list based on its contention that braces and clear aligners are in the same market.) Align is correct that the ability to earn higher profit margins than competitors over a sustained period of time may be evidence of market power. Thus, Align's ability to compute Envista's profit margins on these products and compare them to Align's profit margins does seem relevant to the existence of market power. Envista does not directly address RFPs 1, 2 and 3 in its portion of the letter brief. It states that its final proposed compromise is to produce total revenue by year for its braces, aligners and intraoral

3

scanners. However, Align is attempting to take discovery on the relevant subject of profit margins, and revenue figures will not reveal that information. The Court again believes that the protective order is sufficient to protect Envista's confidentiality concerns over its profit margins. Accordingly, Align's motion to compel is **GRANTED** as to RFPs 1, 2 and 3.

In the argument section of the joint discovery letter brief, Align seems to narrow RFP 19, stating that it "seeks documents sufficient to show which Dental Service Organizations bought Envista's Scanner or Aligners and exemplar agreements." Align argues this information is relevant to Plaintiffs' claim that Align monopolized the scanner and aligner markets in part by entering into exclusive contracts with certain DSOs. Align is correct that documents showing with DSOs bought Envista's scanners or aligners are relevant to proving or disproving the claim of exclusive dealing. Envista does not seem to disagree and offers to provide a list of its DSO customers and its template DSO agreement. Thus, the only disagreement between the parties is whether Envista should produce real exemplar contracts or a template agreement. The problem with a template is that neither Align nor Plaintiffs will know if any actual agreement resembled the template. Producing a template would then seem to necessitate a Rule 30(b)(6) deposition of Envista to learn if its actual contracts resemble the template. It is better for Envista to produce real exemplar contracts because those are actual agreements. Accordingly, the Court **GRANTS** Align's motion as to RFP 19.

For RFPs 7, 9, 10, 11, 12 and 47 – which request Envista's strategy plans – the Court finds that these RFPs seek Envista's "confidential . . . commercial information" within the meaning of Federal Rule of Civil Procedure 45(d)(3)(B)(i). Indeed, it would be hard to overstate the sensitive nature of these materials in the context of this lawsuit. For its aligners and scanners, Envista's largest competitor is obviously Align, which is by far the largest and best known seller of aligners and intraoral scanners. Envista's strategy plans for its aligners and scanners are therefore principally plans for competing against Align. (And in Align's view of the world, in which braces and aligners are in the same market, Envista's strategy plans for its braces are also about competing with Align.) Forcing Envista to turn over these strategy plans *to Align* – no matter how

good the protective order in this case is – strikes at the heart of Envista's most sensitive confidentiality concerns.

Under Rule 45, Align is therefore required to "show[] a substantial need for the . . . material that cannot otherwise be met without undue hardship . . ." Align has not made that showing. Align argues that Envista's strategy plans likely reveal its views and evaluation of the relevant markets, including the scope of the alleged markets, Align's power in those markets, and the vigorousness of competition in those markets. While that is probably true, Align has not shown that Envista is in any better position than Align itself is to evaluate the alleged markets for aligners, braces and intraoral scanners. Align is by far the largest seller of aligners and intraoral scanners in the U.S. and is probably better situated than anyone to understand the relevant markets and competition in them. While Align does not sell metal braces, it cares deeply about the potential interchangeability of braces and aligners and has probably researched that issue more than anyone else. Indeed, in the joint discovery letter brief, Align argues solely that the requested materials are relevant and does not even breathe the suggestion that it has a substantial need for these materials that cannot otherwise be met without undue hardship. Accordingly, Align's motion to compel is **DENIED** as to RFPs 7, 9, 10, 11, 12 and 47.

**IT IS SO ORDERED.**

Dated: January 17, 2023

_____
THOMAS S. HIXSON
United States Magistrate Judge