UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIMON AND SIMON, PC, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ALIGN TECHNOLOGY, INC., <br><br> Defendant. | Case No. 20-cv-03754-VC <br><br><br> Re: Dkt. No. 360 |
| MISTY SNOW, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ALIGN TECHNOLOGY, INC., <br><br> Defendant. | Case No. 21-cv-03269-VC <br><br><br> Re: Dkt. No. 470 |

**ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT**

Although it's a close case, Align's motions for summary judgment are granted. This ruling assumes the reader is familiar with the facts, the record, and the arguments made by the parties. The evidence, viewed in the light most favorable to the plaintiffs, does not give rise to a viable refusal-to-deal claim based on termination of the interoperability agreement with 3Shape.

The parties argue at length about the proper legal test to apply at summary judgment in a refusal-to-deal case. There is indeed confusion in the case law on this issue. But the plaintiffs do

not appear to dispute that "a refusal to deal that is based in part on legitimate business reasons does not violate the antitrust laws, even if it is also motivated by the desire to harm competitors or does in fact harm competitors." MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, Ch. 3 § 2 (AMERICAN BAR ASSOCIATION June 2016); *Oahu Gas Service, Inc. v. Pacific Resources, Inc.*, 838 F.2d 360, 368–69 (9th Cir. 1988); *see also Simon & Simon, PC v, Align Technology, Inc.*, Dkt. No. 420 at 53, 75. On this record, no reasonable jury could reject the notion that termination of the agreement was based "in part" on legitimate business reasons.

It's undisputed that termination of the interoperability agreement was bound up in Align's decision to initiate intellectual property litigation against 3Shape. In that litigation, Align contended that 3Shape's scanner technology (which was the subject of the interoperability agreement) infringed numerous patents. Align terminated the agreement shortly after suing. At that time, Align said publicly that the termination was related to the patent litigation.

The desire to protect and enforce patent rights is a presumptively valid business justification. *Image Technical Serivces, Inc. v. Eastman Kodak Co.*, 125 F.3d 1195 (9th Cir. 1997). Indeed, the plaintiffs here do not contend that Align's patent claims against 3Shape were a sham or lacked merit. Nor, for example, have the plaintiffs contended that the patent claims, even if meritorious, were so low in value as to make litigating them irrational.

What's more, Align's patent infringement lawsuit raised the possibility that 3Shape would assert affirmative defenses (such as waiver and equitable estoppel) based partly on the fact that Align had been, and continued to be, in a business arrangement with 3Shape that involved the use of the allegedly-infringing scanners. And 3Shape ultimately asserted those defenses.

The plaintiffs' primary response to all this is that the particular equitable defenses Align anticipated were exceedingly weak, and that there was no need to blunt those potential defenses by terminating the interoperability agreement. The plaintiffs submit testimony from a patent professor to that effect; he adds that the decision to terminate the agreement actually strengthened other defenses that 3Shape asserted. And the plaintiffs insist it's for a jury to consider the patent professor's testimony and to assess the legitimacy of Align's concern about

2

these defenses. But even if the professor's assessment is accurate, it's beside the point. The possibility that certain defenses, however weak, could be asserted against Align based on the interoperability agreement, and the fact that the defenses Align anticipated were indeed asserted, is strong evidence of a legitimate business purpose behind the termination of the agreement. As is the more general fact that Align was pursuing patent claims against 3Shape—claims whose legitimacy the plaintiffs here do not challenge—based on the very technology used in the scanners that were the subject of the agreement.

To be sure, there is plenty of evidence that Align's course of conduct was motivated in part by a desire to harm an emerging competitor, which would help Align gain share in the scanner market and preserve dominance in the clear aligner market. There is also evidence that Align knew its course of conduct would diminish its own clear aligner profits in the short term. That's what makes this a difficult case. But given the evidence that termination of the interoperability agreement was bound up in the pursuit of patent litigation whose legitimacy the plaintiffs do not challenge—not to mention the evidence that the termination related to a defense that Align reasonably anticipated would be (and was in fact) asserted by 3Shape—in order to get to a jury, the plaintiffs would need to come forward with strong evidence that this was all a ruse. To the contrary, the record contains contemporaneous evidence that Align had long been concerned about patent infringement by 3Shape, as well as contemporaneous evidence that Align was concerned about the effect of the interoperability agreement on the litigation. *See, e.g.*, *Simon & Simon,* Dkt. No. 361-4, Pearl Ex. 1; Dkt. No. 360-4, Pearl Ex. 3; Dkt. No. 361-6, Pearl Ex. 4; Dkt. No. 360-35, Pearl Ex. 34; Dkt. No. 361-40, Pearl Ex. 39; Dkt. No. 261-41, Pearl Ex. 40; *Snow v. Align Technology, Inc.*, Dkt. No. 524-4, Berman Ex. 8; Dkt. No. 524-5, Berman Ex. 9; Dkt. No. 524-23, Berman Ex. 23. On this record, given the presumptive validity of an action taken to protect or assert intellectual property rights, a reasonable jury could not find that Align's expressed concerns were a ruse or that the actions taken to address them were illegitimate.

It's worth noting that Align has offered additional, broader, home run–type arguments for why the plaintiffs do not have a viable refusal-to-deal claim. For example, one factual aspect of

3

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985), that subsequent rulings have deemed important is the willingness of the monopolist to deal with other customers on the same terms that it refuses to deal with the competitor. *See Verizon Communications Inc. v. Law Offices of Curtis v. Trinko, LLP*, 540 U.S. 398, 410 (2004); *Federal Trade Commission v. Qualcomm Incorporated*, 969 F.3d 974, 995 (9th Cir. 2020). To show that Align was willing to deal with others on the same terms that it refused to deal with 3Shape following the patent lawsuit, the plaintiffs would need to present evidence that Align was entirely willing to have similar interoperability agreements with other scanner companies at the time. Align correctly notes that the plaintiffs have not presented evidence that would allow such a conclusion. But the Court does not read the case law as requiring this factor to be present in every refusal-to-deal case; it's just one of many factors to consider. Moreover, it seems possible that treating the absence of this factor as dispositive in all cases could open the door to all sorts of anticompetitive conduct by a monopolist that could not be anticipated here. So the Court declines to rule for Align on this basis.

      Align also interprets the case law regarding refusals to deal as having adopted a test akin to rational basis review of economic legislation under the Equal Protection Clause: if a court can identify any conceivable justification for the refusal, no matter how disconnected that justification might be from the actual record, the defendant wins right out of the gate. Again, the Court does not interpret the case law this way. It's true that the Ninth Circuit has used the phrase "only conceivable rationale" in discussing the refusal-to-deal test. *Aerotec v. International, Inc. v. Honeywell International, Inc.*, 836 F.3d 1171 (9th Cir. 2016). But it has not abandoned the three-step burden-shifting framework for assessing refusal-to-deal claims. *See Qualcomm*, 969 F.3d at 991. And a burden-shifting framework that involves an inquiry into whether a proffered justification is pretextual would make little sense if the inquiry ends the moment a conceivable rationale can be theorized. Read in context, the "only conceivable rationale" language is just another way of stating the generally accepted principle—embodied in the ABA jury instruction cited above—that there can only be refusal-to-deal liability in the absence of a legitimate, non-

pretextual business justification.

Although the remainder of Align's allegedly anticompetitive actions might have combined with the refusal-to-deal claim to form the basis of a larger antitrust claim, they cannot stand on their own. *Simon & Simon, PC v. Align Technology, Inc.*, 533 F. Supp. 3d 904, 918 (N.D. Cal. Apr. 2021). Accordingly, summary judgment will be granted for Align. Presumably, a separate judgment can be entered promptly in the *Simon* action, while the *Snow* action will remain open because of the pending Section 1 claim. A case management conference is scheduled for Friday, March 1 at 10:00 a.m. to confirm this.

**IT IS SO ORDERED.**

Dated: February 21, 2024

VINCE CHHABRIA
United States District Judge